## GRAHAM v. GRAHAM.

'(Supreme Court, Appellate Division, Third Department.    January 4, 1911.)

1. WITNESSES (§ 201*)—PRIVILEGED COMMUNICATION—ATTORNEY AND CLIENT.
    Defendant gave information to the superintendent of the society for the prevention of cruelty to animals of the cruel treatment by plaintiff ·of an animal in his possession, and by the superintendent the matter was reported to the attorneys of the society, and defendant informed them of the acts constituting the cruelty, and an action was brought.    In a subsequent action for malicious prosecution, the superintendent was asked upon the cross-examination if the attorneys for the society advised him when the information was given if they had other witnesses besides· defendant and those acting with him, and the question was objected to as a privileged communication.    *Held*, that it was error to exclude the testimony.
    [Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 201.*]

:2. MALICIOUS PROSECUTION (§ 59*)—ADMISSIBILITY OF EVIDENCE.
    In a suit for malicious prosecution of plaintiff for cruelty to animals, evidence of former cruelties which had been committed by plaintiff and communicated to defendant before the complaint was made was admissible.
    [Ed. Note.—For other. cases, see Malicious Prosecution, Dec. Dig. § 59.*]

3. APPEAL AND ERROR (§ 1060*)—HARMLESS ERROR—CONDUCT OF COUNSEL.
    In a suit for malicious prosecution of plaintiff for cruelty to animals, it was prejudicial error for the attorney for plaintiff to try to introduce evidence as to how many accidents defendant had had with his automobile, or whether he was blameless with reference to them, and whether the husband of one of defendant's witnesses had upon the calendar of that term of court an action against defendant for criminal conversation, and that the husband had notified defendant that he must keep away from his wife, and that defendant had threatened to kill him.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. § 1060.*]

Appeal from Trial Term, Cortland County.

Action by Arthur W. Graham against Eugene N. Graham.    Judgment for plaintiff, and defendant appeals.    Reversed and remanded.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

Davis & Lusk (Rowland L. Davis, of counsel), for appellant.
Irving H. Palmer, for respondent.

JOHN M. KELLOGG, J.    The plaintiff recovered $250 damages for malicious prosecution.    The defendant and 10 others joined in a written petition or complaint to the authorities charging the plaintiff at different times with cruelty to his animals.    The defendant saw the superintendent of the Society for the Prevention of Cruelty to Animals in Cortland, and told him of the particular cruelty for which the complaint was finally made, reciting that he saw the offense committed.    The superintendent took no action until he went and ex-

amined the horse which was alleged to have been injured. He reported the matter to the attorneys of the society, and took the defendant before the attorneys, where he stated the acts which he said he saw constituting the cruelty. The attorneys thereupon 'prepared a complaint, which the superintendent lodged with the justice and swore to. He also lodged with the justice a deposition to be sworn to by the defendant and the other person with him who signed the original petition. At the request of the superintendent, they swore to the deposition before the justice. The plaintiff was arrested, the prosecution conducted by the superintendent and the attorneys of the society, the defendant and some of the other signers of the petition were called by the superintendent as witnesses upon the trial, witnesses were called also by the plaintiff, and the plaintiff was discharged.

The information the defendant gave to the officer, his evidence upon the trial before the magistrate, and his evidence here is to the effect that he saw the defendant strike and beat his horse with a gas pipe or club, knock the horse down, and that the horse lost one eye, and suffered other serious injury. Six other witnesses upon the trial swore that they saw the occurrence, and their evidence tends to show, not only that the defendant had reasonable cause, but that the plaintiff committed the crime.

The evidence of the plaintiff and his hired man tends to show that no offense was committed; but they swore that about the same time both of the plaintiff's horses had the colic in the stable, and one of them got down and pounded its head against the floor, lost its eye, and bruised itself most seriously, and in that way accounted for the injured eye and the other bruises which the superintendent of the society saw upon the horse. The plaintiff's wife, a witness upon the trial, was not sworn upon that subject, although she was residing with him upon the farm. Some of his family swear that, when they came from school, they knew the horse was being doctored, as they understood, for the colic.

It is strange that the horse should receive the injury in the manner recited by the plaintiff and his hired man. They were both interested in the result, because, if the crime was committed, they were both participants, and perhaps the preponderance of the evidence fairly shows that, if the plaintiff did not commit the crime there was at least good cause to believe that he did. Upon cross-examination the plaintiff admitted that perhaps one of these horses fell down at the sand bank when drawing a load of sand at about the time the offense was alleged to have been committed; that if he struck it it was with the whip. Defendant offered to prove a prior act of cruelty by a witness who saw it and communicated it to him before the complaint was made. This was excluded under exception. As bearing upon the question whether the defendant instituted the proceedings upon cross-examination of the superintendent, he asked him if the attorneys for the society advised him at the time the information was given that they had other evidence and other witnesses besides the information given by the defendant and those acting with him. This was objected to as a privileged communication between attorneys and client, and was erroneously excluded under the defendant's exception.

The court charged the jury in substance that to recover the plaintiff must establish three propositions: "First. That the prosecution was instituted or caused or instigated by the defendant. Now I do not understand that upon the evidence in this case there can be very much question upon this point. As I understand the evidence of the defendant, he concedes that he brought this matter to the attention of the officer for the Society for the Prevention of Cruelty to Animals, and made a complaint to him that the plaintiff had violated the law, and he also, in addition to that, made a deposition before the justice of the peace, so I think you will have little difficulty in reaching a conclusion upon the first question," to which the defendant excepted. The defendant contended that he did not institute the proceedings, that an enraged neighborhood agreed that prosecution must be had, and the matter called to the attention of the society, and that, while first saying the matter better be dropped, he did communicate it to the officer, and at his request saw the attorneys for the society and presented to them the petition, and that he had no other concern or interest in the matter, and that the officer acted upon the advice of counsel upon information which they gave him upon his personal examination of the horse and information which he received from others, as well as the defendant and signers of the petition. The court charged the jury that this was a case where one of the parties had manufactured a story, and he and his witnesses had told it from the stand, a story manufactured for the purpose of the case, and it evidently felt that, if the defendant did not see the cruelty committed, he was swearing falsely, and therefore there could be no mitigating circumstances arising from reports of other cruelties.

It is evident that on the day in question the plaintiff had some difficulty with his team in the sand bank, that one of the horses fell, and that they were whipped. It may be that they were only hit with a whip; that the horse was not knocked down. It is possible that, if the defendant and the other parties. interested had heard of the abuse by plaintiff of his horse under similar circumstances, they might more easily have seen the occurrence in an exaggerated manner and imagined that the horse was knocked down by a blow with a club. I think the defendant was entitled to show the former cruelties which had been communicated to him before the complaint was made.

It was not pertinent inquiry how many accidents the defendant had had with his automobile, or whether he was blameless or otherwise with reference to them. It was not important whether the husband of one of the defendant's witnesses in the action had upon the calendar of that term of court an action against the defendant for criminal conversation, and that the husband had notified the defendant that he must keep away from his wife, and the defendant had threatened to kill him. It was a breach of propriety for the counsel to try to bring that action and the controversy in that action before the jury solely to prejudice this case, when the counsel knew that it was not admissible. It was evidently not made in good faith. Where upon a close question of fact before a jury counsel resorts to such methods to win a verdict, he does it with the knowledge that he imperils the verdict which

he thus seeks. It is probable that in this case this practice had the desired effect in influencing the verdict.

The above exceptions and offers of testimony were prejudicial to the defendant, and are quite probably reflected in the verdict. The judgment and order are therefore reversed, and a new trial granted, with costs to the appellant to abide the event.