JOSEPH ZUKAS, Respondent, *v.* LEHIGH VALLEY COAL COMPANY, Appellant.

Second Department, April 11, 1919.

**Master and servant — negligence — injury to workman in Pennsylvania coal mine — notice to mine superintendent — want of sufficient props — verdict against weight of evidence — new trial.**

In an action for personal injuries plaintiff claimed that he and two fellow-workmen in defendant's mine in Pennsylvania were carrying a timber prop seven feet long and twelve inches by twelve inches, weighing about 500 pounds, up the runway of a breast or chamber in the mine having a pitch of about forty-five degrees, when a rock, which for some time had appeared to be loose and was unsupported, fell from the roof and struck plaintiff's leg, crushing it. Plaintiff's right to recover depended upon two facts: (a) That prior to the accident he had notified defendant's superintendent (not merely mine foreman) of the dangerous condition and want of proper props and had asked him to remedy it and had been directed by the superintendent to continue working and told that he, the superintendent, would send the props when he got them, and (b) that there was in the mine a want of suitable props of sufficient length. Evidence examined, and

Second Department, April, 1919.          [Vol. 187.

*Held*, that a judgment in favor of the plaintiff and an order denying defendant's motion for a new trial should be reversed and a new trial granted, upon the ground that the verdict was against the weight of the evidence as to the following matters: (a) The notice by plaintiff to the mine superintendent; (b) the want of sufficient props at hand in the mine for plaintiff and his fellows to use, and (c) the manner of the happening of the accident — that is, whether or not the prop, which plaintiff and his fellows were moving, struck and knocked down the supporting prop and so caused the rock to fall.

Appeal by the defendant, Lehigh Valley Coal Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 21st day of February, 1918, upon the verdict of a jury for $4,000, and also from an order entered in said clerk's office on the 5th day of March, 1918, denying defendant's motion for a new trial made upon the minutes.

*Edward W. Walker* [*William W. Green* with him on the brief], for the appellant.

*Vine H. Smith*, for the respondent.

Mills, J.:

The claim of the plaintiff was and is that he and two fellow-workmen in defendant's mine in Pennsylvania were carrying a timber prop, seven feet long and twelve inches by twelve inches, weighing about 500 pounds, up the manway of a breast or chamber in the mine having a pitch of about forty-five degrees, when a rock, which for some time had appeared to be loose and was unsupported, fell from the roof and struck the plaintiff's leg, crushing it. The case was previously tried before the same justice and a jury, and that trial resulted in a disagreement.

Under the law, as settled by several decisions and well known, plaintiff's right to recover depended upon two vital facts, namely, (a) that prior to the accident plaintiff had notified defendant's superintendent (not merely mine foreman) of the dangerous condition and want of proper props to remedy it and had been by the superintendent directed to continue working and told that he, the superintendent, would send the props when he got them; and (b) that there was in the mine a want of suitable props — here those of sufficient

length. The learned trial justice in his charge so submitted the case.

The plaintiff's injuries were very serious, resulting in the amputation of his right leg only four inches below the groin. The jury rendered a verdict of only $4,000, which fairly indicates that the same was the result of compromise, if not of sympathy — at least that some of the jurors doubted defendant's liability. In denying defendant's motion for a new trial, after briefs had been submitted, the learned justice filed a memorandum opinion which indicates pretty clearly that he believed plaintiff's testimony to be false. The opinion concludes with these words: " The jury having finally found in favor of plaintiff, the trial court is not permitted under the accepted ruling of our decisions, to substitute its judgment in place of the verdict of the jury, which, in this case, the trial court believes calls for the closest scrutiny of the appellate court." I cannot imagine any reason why the case " calls for the closest scrutiny of the appellate court," except as to the credibility of the plaintiff. If his testimony upon this trial be accepted as true, he presented an ideally perfect case for a recovery and should have had a much larger verdict. Neither can I perceive any reason why the appellate court is under any greater duty of close scrutiny than the trial court. Apparently no claim was made at the trial and none is made here that the plaintiff had not become a *bona fide* resident of this State, and, therefore, we have not that question to deal with. Appellant's contention is, in short, that the findings, which the verdict imports, that the plaintiff gave such notice to the superintendent, and that there was an actual want of suitable props, were against the weight of the evidence.

As to the first, the finding of notice to the superintendent, the plaintiff testified to it as having given such notice several times, and even that the superintendent told him that if he did not go on with the work as things were, that is, without the proper props, he would be " sacked." Plaintiff was to some extent corroborated upon this point by the witness Branko, a fellow-workman, but only to the extent that he heard plaintiff and a superintendent talking " something about the props " and about " something loose." The superin-

tendent denied that any such conversation occurred. It appeared that at the previous trial, when there was a disagreement of the jury, plaintiff testified that the superintendent told him to go to another place and work, whereas at this trial he testified that the superintendent told him to " go ahead " and work, leaving out the reference to another place. It appeared also at this trial that Branko made a written statement shortly after the accident, in which he gave a decidedly different version of the happening of the accident than that given by him upon this trial. In that statement he said that the accident happened by the plaintiff hitting the prop, which they were moving, against one of the supporting props and knocking it down, whereas upon this trial he said that no such thing happened.

As to the finding that there was a want of suitable props — that is, those ten feet long — plaintiff and his fellow-workman Branko so testified. Upon the other hand the mine foreman, the assistant foreman and Cain and Ambrose, two of plaintiff's fellow-workmen, testified that there were there in the mine, at hand, sufficient props of sufficient size. Cain was not working for the defendant at the time of the trial, and it did not appear that he had, while in defendant's employ, committed himself by any statement.

Moreover, there was a very serious controversy in the evidence as to how the accident happened. The plaintiff and his fellow-workman, Branko, testified, in effect, that the rock fell just as they had gotten the prop which they, with Wally (another fellow-workman), were moving up under or near the rock, and, in effect, that no supporting prop was knocked down causing the rock to fall; while Wally testified that the prop which they were carrying struck and knocked down the prop which was supporting or under the rock, and that then the rock fell; and the superintendent, the mine foreman and the assistant mine foreman all testified that immediately after the accident they found that supporting prop down. The assistant mine foreman testified that Branko at once after the accident, and there in the mine, told him that they had knocked that prop down; and the statement in proof, signed by Branko by his mark, was to the same effect; but Branko denied having made either such statement.

It seems to me that the evident impression of the trial judge that the verdict was against the weight of the evidence was correct, and that he should have had the courage of his conviction and set it aside, and not, as apparently he did, passed the problem along to us for solution. I cannot see that the fact that the jury upon the previous trial disagreed· should have led the trial justice towards sustaining the verdict, but, if anything, it appears to me that the fair suggestion from that situation was the other way. It seems to me that the fact that the plaintiff made so vital a change in his testimony between the two trials, and the fact that there was so much testimony to show that Branko, plaintiff's only corroborating witness, shortly after the accident gave so different a version of it, under which plaintiff could not recover, and the fact of the improbability of plaintiff's story as to his conversations with the superintendent gave such weight to the opposing testimony above reviewed that we should hold the verdict against the weight of the evidence as to each of the three elements above discussed.

I advise, therefore, that the judgment and order appealed from be reversed and a new trial granted, costs to abide the event, upon the ground that the verdict was against the weight of the evidence as to each of the following matters, viz.: (a) The notice by plaintiff to the mine superintendent; (b) the want of sufficient props at hand in the mine for plaintiff and his fellows to use; and (c) the manner of the happening of the accident — that is, whether or not the prop, which plaintiff and his fellows were moving, struck and knocked down the supporting prop and so caused the rock to fall.

PUTNAM, BLACKMAR and KELLY, JJ., concurred; JENKS, P. J., concurred in separate memorandum.

JENKS, P. J.:

I am of opinion that the more orderly disposition of this appeal is to reverse the order and to remit the case to the learned court to dispose of the merits of the motion made for a new trial. In the opinion handed down upon that motion, the court states that such motion was made " principally upon the ground that it is against the weight of evidence. This is the second trial of this action before the

Second Department, April, 1919.    [Vol. 187.

same court, the first jury having disagreed. It would seem, therefore, that whatever this court may think of this particular case, and the class to which it belongs, no benefit will result by the granting of defendant's motion, but nevertheless the same should receive serious consideration by the appellate courts." Then after discussion, not upon the evidence, the court continues: " The jury having finally found in favor of plaintiff, the trial court is not permitted under the accepted ruling of our decisions, to substitute its judgment in place of the verdict of the jury, which, in this case, the trial court believes calls for the closest scrutiny of the appellate court." The defendant had a legal right to the exercise of the judgment by the court. While the court is not permitted to substitute its judgment as a finality in place of the verdict of the jury, the court has full power, if it be dissatisfied with the verdict as against the weight of evidence or contrary to the evidence, to grant a new trial, and it is its duty to do so. For the reason, then, that it seems to me that the court, under a mistaken view of its duty, relegated its own function to the Appellate Division, justice to the defendant demands that the court should be required to dispose of the motion upon the merits; but, inasmuch as my brethren do not take ·this view, I can but express my individual opinion. As I think that the court is right in the relief of reversal, I assent to this disposition of the case.

Judgment and order reversed and new trial granted, costs to abide the event.