CHERRY CREEK NATIONAL BANK, Respondent, *v.* THE FIDELITY
AND CASUALTY COMPANY OF NEW YORK, Appellant.

Fourth Department, January 11, 1924.

Insurance — burglary insurance — policy excepted loss not caused by
forcible entry into safe — verdict in favor of plaintiff on issue of forcible
entry not contrary to weight of evidence — arguments of counsel —
judgment reversed for prejudicial argument by plaintiff's counsel.

In an action to recover on a policy of burglary insurance which excepted loss not
caused by forcible entry into the safe or vault from which the property was
stolen in this case, the verdict of the jury on the issue of forcible entry is not,
though the evidence is very close, contrary to the weight of the evidence.

It was prejudicial error requiring a reversal of the judgment and the granting of
a new trial for plaintiff's attorney to state to the jury that another policy of
insurance covering the same risk had been paid; that the defendant intended
to establish that some of the employees of the plaintiff robbed the bank, and to
state to the jury, in effect, that the defendant was endeavoring to prevent
recovery of an honest claim. The statements and arguments by counsel are
especially prejudicial, since many of them were made after counsel had been
admonished by the court to refrain from such conduct.

Breaches of the rule limiting counsel to the discussion of the evidence have become
all too frequent of late. It is time that the bar should realize that when counsel
in a close case resort to such practice to win a verdict, they imperil the very
verdict which they thus seek.

APPEAL by the defendant, The Fidelity and Casualty Company
of New York, from a judgment of the Supreme Court in favor of
the plaintiff, entered in the office of the clerk of the county of
Chautauqua on the 16th day of January, 1923, upon the verdict
of a jury, and also from an order entered in said clerk's office on
the 19th day of December, 1922, denying the defendant's motion
for the direction of a verdict in its favor and its motion for a new
trial made upon the minutes.

*Franklin R. Brown* [*Robert H. Jackson* of counsel], for the
appellant.

*Pickard & Bodine* [*C. A. Pickard* of counsel], for the respondent.

PER CURIAM:

The plaintiff's cause of action is founded upon a policy of burglary
insurance written by the defendant by the terms of which defendant
agreed to indemnify the plaintiff (under General Agreement A)
" FOR ALL LOSS of money and securities from within any safe
or vault to which insurance under this policy applies caused by
the felonious abstraction of the same during the day or night by
any person or persons after forcible entry by such person or persons

or any accomplice thereof into the safe or vault while duly closed and locked."

The policy also contains the following clause:

" ROUND OR SCREW DOOR SAFE. The Company shall not be liable under General Agreement A for any loss from within a round or screw door safe or from within any safe containing a round or screw door chest, unless the loss is effected from a compartment of such safe which is protected by the round or screw door, nor for any loss from any safe containing a steel burglarproof chest unless the loss is effected from within the said chest after both forcible entry into the safe and forcible entry into the said chest."

The securities which were stolen from plaintiff's bank were taken from inside a screw door safe which was equipped with a timelocking device. At the beginning of the trial defendant's counsel conceded the burglary and every element of the plaintiff's case except that the entry into the screw door safe was made forcibly when it was securely locked. The issues presented were, therefore, necessarily distinct and narrow.

To sustain the plaintiff's contention that there was an entry by force into the safe when locked, testimony was given that on the evening before the burglary the time-locking mechanism was wound and set and that the door of the safe was properly screwed down until it was closed and locked and that the safe was thus securely closed and locked through the medium of the time-locking apparatus to remain so until eight o'clock the following morning, which was concededly later than the time when the burglary occurred. The testimony as to the winding and setting of the time-locking device and as to the closing of the safe was given by persons who actually did these things on the evening before the burglary, and by witnesses who saw the acts done. Counsel for the plaintiff admitted his inability to demonstrate the way in which the forcible entry into the safe was made, but offered expert testimony as to how such a forcible entry might have been accomplished. Plaintiff relied upon the proof that the safe was securely locked by the time lock to establish inferentially that the entry, which was unquestioned, was made by force. The defendant on the other hand relied upon the absence of substantial marks upon the safe, together with opinions of experts, principally employees of safe manufacturing and distributing companies, to overcome the plaintiff's contention of a forcible entry. The defendant's theory that the entry was not forcible was necessarily in conflict with the plaintiff's evidence in respect to locking. The defendant contended that the plaintiff's employees must necessarily have failed in

accurate adjustment or setting of the locking mechanism or in closing the screw door completely so that the bolts took hold.

These conflicting proofs and theories presented a proper subject for consideration and determination by the jury. Claims of each party find substantial support in the evidence. In our opinion the verdict for the plaintiff is not contrary to the weight of the evidence.

The case was, however, close and it was essential that the issues should be determined by an impartial jury upon legal evidence uninfluenced by extraneous and prejudicial circumstances.

We must now mention some incidents of the trial.

In the opening to the jury by the plaintiff's counsel after the issues had been narrowed by the concessions above mentioned, the plaintiff's counsel said: " The bank at that time carried two policies divided between two companies. One of the companies, the Maryland Casualty Company, who carried a policy, has paid its insurance." At this point the defendant's counsel interposed an exception and on his motion the court instructed the jury to disregard the remark. It was not the mention of another policy which was serious, but the statement of payment of other insurance. No justification can be offered for such statement. (*Cleveland* v. *New York & Queens County R. Co.,* 123 App. Div. 732.)

In the final argument to the jury by plaintiff's counsel he used the following language: " [Plaintiff's counsel]: I want to leave that for a minute and talk about those vault doors [referring to a vault in which the screw door safe was kept] which I forgot about. You know the vault doors were burned, two sets of them. They started out very bravely, with shoulders back, heads in the air, and they were going to show you about those vault doors — and what they had in mind was that they were going to try and establish that the vault doors were not locked but were burned when they were opened, and they originally meant that some of these girls, Miss Lake or Smith or someone else,— robbed that bank. [Defendant's counsel]: I object to that as highly prejudicial. The Court: They never made any such proposition. [Plaintiff's counsel]: I said that that is what they meant to do. The Court: You must be fair. [Defendant's counsel]: We stipulated at the opening of the trial. I ask to have this declared a mistrial, for that reason. The Court: No, I will ask the jurors to disregard any such fantastic and ridiculous claim as made by the attorney for the plaintiff,— that the defense meant to charge this to Mr. Crissey, president of the bank. Please don't let such a silly idea find any lodgement in your mind."

Finally toward the close of the address the following occurred:

Fourth Department, January, 1924. [Vol. 207

" [Plaintiff's counsel]: * * * I simply want to say to you that I hope and believe that this jury is going to place the stamp of its condemnation on the kind of practices which have obtained in this case. I think you are going to put the stamp of your condemnation upon the defense of lawsuits of this character by outside people whose business it is not. What are we going to think when we get denied a little insurance which is due us? Have we got to fight to get it? Have we got to fight the bank accounts of all these mighty corporations? [Defendant's counsel]: I except to that and renew my motion [to withdraw juror and put case over the term]. The Court: That is directly prejudicial and referred to for the purpose of prejudicing the jury. I really should dismiss this case and put the case over the term, and will do so if this treatment is continued. [Plaintiff's counsel]: I except to that term. The Court: I admonish the jurors to pay no attention to that sort of demagogic remark. [Plaintiff's counsel]: I except to that statement. May I give to the jury the basis of my charge? The Court: No. You referred to these corporations for the purpose of creating prejudice. [Plaintiff's counsel]: No. It is for them to get the facts as I understand them. The Court: The time has arrived for the — [Plaintiff's counsel]: I will finish in just one word, if you will let me. The Court: Very well. [Defendant's counsel]: I except to the denial of my motion to withdraw a juror, under the circumstances."

These quoted passages do not embody all of the occurrences of this kind upon the trial but they are fair samples of the others and illustrate sufficiently the conduct of counsel.

In our opinion the learned trial court chose apt and vigorous words to characterize the conduct. His admonitions to counsel were sound and should have been regarded. His instructions to the jury were well and properly given. He did every thing to protect the interests of the litigants short of declaring a mistrial. He expressed his impression that he should also have done that. We agree with him that in view of the serious character of the repeated breaches of the rules, the defendant's motion that a mistrial be declared ought to have been granted. (*Zukas* v. *Lehigh Valley Coal Co.*, 187 App. Div. 315, 319.)

The rule allowing counsel when addressing the jury the widest latitude in discussing the evidence and presenting the client's theories falls far short of authorizing the statement by counsel of matter not in evidence, or indulging in argument founded on no proof, or demanding verdicts for purposes other than the just settlement of the matters at issue between the litigants or appealing to prejudice or passion. The rule confining counsel to legitimate

argument is not based on etiquette but on justice. Its violation is not merely an overstepping of the bounds of propriety but a violation of a party's rights. The jurors must determine the issues upon the evidence. Counsel's address should help them to do this, not tend to lead them astray. (*Cattano* v. *Metropolitan Street R. Co.*, 173 N. Y. 565.) The law is so insistent that misleading prejudicial matter shall not be allowed to enter jurors' minds that under certain circumstances the asking of an incompetent question for an ulterior purpose, even though the question be not answered, will justify the setting aside of a verdict. (*Cosselmon* v. *Dunfee*, 172 N. Y. 507.) Breaches of the rule limiting counsel to a discussion of the evidence have become all too frequent of late. It is time that the bar should realize that when counsel in a close case resort to such practices to win a verdict, they imperil the very verdict which they thus seek. (*Graham* v. *Graham*, 142 App. Div. 131; *National Supply Co.* v. *Jebb*, Id. 256; *Harris* v. *Eakins*, 201 id. 257; *Loughlin* v. *Brassil*, 187 N. Y. 128; *Simpson* v. *Foundation Co.*, 201 id. 479; *Dimon* v. *N. Y. C. & H. R. R. R. Co.*, 173 id. 356; *Cox* v. *Continental Insurance Co.*, 119 App. Div. 682; *Williams* v. *B. E. R. R. Co.*, 126 N. Y. 96.)

The misconduct was repeated. It cannot be deemed inadvertent or harmless.

The judgment and order should be reversed upon the facts and a new trial granted, with costs to the appellant to abide the event.

All concur. ·

Judgment and order reversed and new trial granted, with costs to appellant to abide event. The said reversal and granting of a new trial are ordered for errors of fact and as a matter of discretion, justice requiring a new trial.