## UNITED STATES v. CERTAIN LANDS IN TOWN OF HIGHLANDS et al.

District Court, S. D. New York.

Dec. 7, 1942.

Harry T. Dolan, Sp. Asst. to Atty. Gen., for plaintiff.

Miller, Bretzfelder & Boardman, of New York City (John E. Mack, of Poughkeepsie, N. Y., and Bertram Boardman, of New York City, of counsel), for Cragston Associates, Inc.

Kopald & Haft, of Highland Falls, N. Y., for David Hardy and Melvin and Keuhn.

V. R. Foley, of New York City, for judgment lienors.

Ivan E. Maginn, of New York City, for Alber & Davenport.

Kahn & Unger, of New York City, for certain claimants.

RIFKIND, District Judge.

Plaintiff, the United States of America, moves for an order confirming and adopting the report of commissioners of appraisal heretofore appointed in this condemnation proceeding. The lands involved are sought by plaintiff as part of its program of expansion of the United States Military Academy at West Point, New York. See United States v. Certain Lands in Town of Highlands, D.C.S.D.N.Y. 1941, 36 F.Supp. 968; Id., D.C.1941, 36 F.Supp. 971; Id., D.C.1942, 45 F.Supp. 126.

The commissioners qualified, viewed the property, held extensive hearings and have filed their report. Several of the claimants object to confirmation. The discussion which follows is addressed, however, chiefly to the exceptions taken by Cragston Associates, Inc., vendee in possession under a contract of sale with Cragston Development Corp., owner of the largest portion of the tract under consideration.

The exceptions are ten in number as follows:

1st. That the award is contrary to law and to the evidence in the case and that there is no evidence to sustain it.

2nd. That there was erroneously admitted into evidence testimony relating to extraneous, irrelevant and immaterial matters and things prejudicial to this defendant and having no bearing upon the single issue involved.

3rd. That the Commissioners erroneously awarded the sum of $6,350.00, a grossly inadequate sum, for the buildings erected upon the land taken having a present reconstruction value of $91,500.00.

4th. That the Commissioners erroneously awarded no sum whatsoever for the other structures upon the land taken, having a present reconstruction value of $74,620.-00.

5th. That the Commissioners erroneously awarded no sum whatsoever for the present water supply system taken in this proceeding despite evidence that the replacement cost thereof is $93,400.00.

6th. That the Commissioners erroneously awarded no sum whatsoever for the

trees upon the land taken despite undisputed evidence that said trees are readily removable without injury to the land and that there is a ready market therefor in which such trees would bring the sum of $34,648.00.

7th. That the Commissioners erroneously failed to state the severance or consequential damage to the remainder of the defendant's property if their award in fact includes any such damage whatsoever.

8th. That the Commissioners erroneously awarded this defendant the sum of $157.00 an acre for the land taken, to include severance damage, whereas said Commissioners awarded to the other defendants damage at the rate of $2,000.00 an acre for their land taken, with no severance damage claimed or awarded.

9th. That the importation into the record of extraneous, irrelevant, immaterial and prejudicial matters and things by the petitioner-plaintiff and the unwarranted and unjustified attacks made upon this defendant, its officers, stockholders and witnesses, coupled with the intemperate and violent remarks of petitioner-plaintiff's counsel as contained in the brief submitted to the Commissioners was calculated to and did prejudice this defendant and inflame the Commissioners so against it that the award is the result of passion and prejudice and should not be permitted to stand.

10th. That the award is so low as to shock the conscience; that if confirmed it would result in depriving this defendant of its property without just compensation, in violation of the mandate of the constitution of the United States.

For purposes of analysis these exceptions may be grouped into three classes:

I. The insufficiency of the report.

II. The inadequacy of the award.

III. The conduct of the hearing.

I. The objector asserts that the report is defective in that the commissioners omitted to state separately the severance or consequential damage to the remainder of its property. With respect to severance damages the report states: "The amounts hereinbefore set forth and being the amounts fixed and determined to represent the just compensation which should be paid for the proposed taking of parcel I * * * include any and all severance damages to which Cragston Development Corp. and Cragston Associates, Inc. may be entitled, by reason of the fact that all of their property or all of the property to which they claim rights or interest therein is not sought to be acquired by the Petitioner-Plaintiff in this proceeding". The only case cited in support of the alleged requirement that severance damages must be separately stated in the award is South Buffalo Ry. Co. v. Kirkover, 1903, 176 N. Y. 301, 68 N.E. 366. While it appears from the opinion that in that case the commissioners' award did separately state that element of damage there is no intimation therein that the omission of such separate statement would have vitiated the report or the award.

■ The order appointing the commissioners in the case at bar directed that the award specify separate items of damage for land and buildings, if any. There has been compliance with that direction. I do not find any authority for the proposition that a separate statement must also be made of the item of severance damage nor does the report bear internal evidence that such item of damage was overlooked. The contrary is expressly declared. This objection is, therefore, overruled.

■ II. It would be fruitless to summarize and analyse the voluminous testimony with respect to the appraisals of the lands and buildings under review. The usual disparity between the claimants' experts and the Government's experts appears in the instant proceeding. The divergence arises in part out of a difference of opinion concerning the use for which the land is adapted. It is not suggested by the objecting parties that any evidence probative of value has been excluded. It seems clear, therefore, that the commissioners had before them an issue of fact. They have resolved that issue. Where the error assigned is that the award of the commissioners is inadequate the court should not interfere with the findings of the commissioners unless it is manifestly wrong or shocks the conscience.

■ The commissioners are not bound by the opinions expressed before them nor by the apparent weight of the evidence. Shoemaker v. United States, 1893, 147 U. S. 282, 13 S.Ct. 361, 37 L.Ed. 170; United States v. Four Parcels of Land, D.C.S.D. N.Y.1937, 20 F.Supp. 306; Benedict v. City of New York, 2 Cir., 1899, 98 F. 789; St. Bernard Cypress Co. v. United States, 5 Cir. 1933, 65 F.2d 711.

■ That the scope of review of the award of the condemnation commissions is confined to very narrow limits is a rule so well established that the citation of authority is superfluous.

■ In the instant case the award to Cragston Associates, Inc., for the main tract of approximately 535 acres and the buildings thereon is $90,350.00. Additional parcels held by Cragston Associates, Inc. are appraised by the commissioners at $9,595.00. The total award to this claimant is $99,945.00. In 1928, J. P. Morgan sold a tract, larger by 180 acres and including the appraised tract and parcels, for $100,000.00. Since that time some improvements have been added. On the other hand, the original structures have depreciated and deteriorated. The intervening history does not reveal such a clear enhancement in value as to render the award of the commissioners subject to the characterization that it is manifestly wrong or that it shocks the court's conscience.

■ Perhaps the objecting claimant has a just grievance. It is possible that the long lapse between the time when Congress first publicly evinced an interest in this tract for the uses of the U. S. Military Academy and the commencement of these proceedings thwarted the efforts of the claimant fully to subdivide the tract and dispose of home sites and recreational facilities. I know, however, of no method of compensating an owner for such consequences of Congressional action. Legislative debates or even unfounded rumors may affect market values favorably or adversely. The owner is entitled to no more than the market value of the property taken regardless of the myriad influences which combine to annex that value to the property.

■ The function of the commissioners is to find that market value. They were selected by the court to perform that function because they were deemed especially equipped to form an intelligent judgment. That judgment should not be disturbed except in cases of "gross error, showing prejudice or corruption". Shoemaker v. United States, supra, 147 U.S. 306, 13 S.Ct. 393, 37 L.Ed. 170.

III. The objecting claimants contend that the award is not the product of a fair hearing; that the commissioners received a large volume of evidence irrelevant to the issue of value and designed to besmirch the character of the claimant and to prejudice the commissioners against it; that counsel for the plaintiff engaged in practices, long condemned by the courts, for the purpose of arousing passion and prejudice.

■ ■ This is a serious charge which requires consideration. The Supreme Court has admonished us that, "The state, whose interest it is the duty of court and counsel alike to uphold, is concerned that every litigation be fairly and impartially conducted and that verdicts of juries be rendered only on the issues made by the pleadings and the evidence. The public interest requires that the court of its own motion, as is its power and duty, protect suitors in their right to a verdict, uninfluenced by the appeals of counsel to passion or prejudice". New York Central R. Co. v. Johnson, 1928, 279 U.S. 310, 49 S.Ct. 300, 303, 73 L.Ed. 706. See, also, Price v. Mullen, 1936, 247 App.Div. 532, 288 N.Y.S. 828; Cherry Creek National Bank v. Fidelity & Casualty Co. of New York, 1924, 207 App.Div. 787, 202 N.Y.S. 611; Bagully v. Morning Journal Association, 1899, 38 App.Div. 522, 56 N.Y.S. 605; Zemliansky v. United Parcel Service, Inc., 1940, 175 Misc. 829, 24 N.Y.S.2d 672, and cases there cited.

At the close of the hearing before the commissioners plaintiff filed a brief from which but a few illustrative excerpts are here set forth:

"In the trial of this proceeding Cragston Development Corporation and Cragston Associates, Inc. have sought to predicate the present fair market value of this property upon its value for subdivision purposes, this being the 'shop-worn' and 'threadbare' theory of valuation which has been employed in each and every condemnation proceeding instituted by the Government for the acquisition of land in this vicinity and which has received at the hands of three commissions, the disregard and contempt which it so justly deserves."

"Cragston Associates, Inc.
alias
Bernard A. Ruge"

"Ruge has, at all times, been merely a 'front man' and a 'stooge' for the Shelbey-Levingston group.

"I could write a book pointing out the false and inconsistent statements made by

this witness * * * but I believe such effort would be a waste of time both on my part and on the part of the Commission in reading such a report * * *. No commission yet has given the slightest consideration to his opinions or his testimony, and it is not believed that the impression which he has made in this case will reverse the precedent which has been heretofore established."

"The Government has submitted for your consideration, on the question of the value of this property, the testimony of William J. Yates, who (sic) I personally consider to be the best qualified appraiser of land in this area."

"He has testified that the farm group of buildings, in his opinion, do not enhance the value of this land and in this respect I am in accord * * * and in my judgment, the cost of placing these buildings in a good state of repair and maintaining them would not be justified for any use for which a demand exists."

"The character of the owners and their nefarious background do not affect the potential value of the property sought to be acquired, but they do, in my judgment, furnish a fair criterion of the validity, weight and credibility of the claim which they make for the proposed taking of their property. The historical background of Cragston Development Corp. [etc.] is pockmarked and replete with fraud, deceipt, (sic) false representations, misrepresentations, concealment, evasion and downright, intentional and premeditated perjury."

" 'Wake up, America' is the slogan so frequently used by the press in this most critical period in the nation's history * * *. * * * Today, as never before, your Government is appealing to every man, woman and child to contribute, not his or her dollars, but their dimes and quarters to help save this nation from the fate that has befallen other nations which have enjoyed some measure of freedom, but which have failed to adequately provide for the common defense of their lives and property, and have been insensible to their public duties. * * * How unfortunate it is in this time of national emergency that we have such a considerable number of our citizens who place personal greed and exploitation of their fellow countrymen above a desire and willingness to share the common burdens and sacrifices which are essential if this nation and private ownership of property are to endure! If this condition is to be allowed to exist, it might be well to substitute 'God Save America' for 'Wake Up, America!' ".

"These claimants, under our American standards, are, notwithstanding their background and their distorted financial philosophy, which places personal greed and exploitation of the masses above personal sacrifice in the common defense of their country and fellow countrymen, entitled to just compensation and the fair value of the property which their Government has determined is necessary to help train potential 'McArthurs' and 'Wainwrights' for the defense of all that we cherish and hold dear".

"Cragston Development Corporation [etc.] were all fish out of the same kettle. They are all tarred with the same brush. They all personify fraud, misrepresentations, concealment, deceit, and the type of promoters whose annual 'take' from the credulous small investors is a crime and a disgrace. 'Birds of a feather flock together', and every dime they have taken out of this property, with the exception of their hold-up of Morgan, * * * has been obtained through fraud, misrepresentation and reprehensible business practices. This is the type of citizen who thinks his Government has mistreated him. This is the type who thinks he should receive special consideration from that accorded the natives of the Town of Highlands, who have lived on this land and paid taxes for so many years".

 I am not impressed by the argument of counsel for plaintiff that the record justifies such language. I have examined the record. It does not warrant such language. No proper record in a condemnation suit ought to afford a basis for such vituperative comment by counsel. Indeed, a good deal of it cannot be justified by the record in any case.

Such appeals to sectional prejudice, to the passions engendered by the war, such use of the names of great military heroes in an effort to make the respondent's attempt to recover compensation appear like cold-blooded greed in comparison with the willingness of these brave men to lay down their lives for their country, cannot be justified under any circumstances. If such

practices have a proper place in the courtroom then our law schools ought to give courses in demagogy. Personal endorsement by counsel of his own witness and personal condemnation of the adversary's witness have no proper place at a trial. References to other verdicts are repugnant to the idea that each verdict shall be founded upon the evidence adduced at the trial which produces the verdict.

Were the objectionable matter herein mentioned presented to a jury, I would have no doubt whatever that the verdict so procured would have to be set aside. As the courts have repeatedly said, such tactics by counsel must be condemned not upon considerations of etiquette but upon considerations of justice.

In the instant case, however, we are concerned not with the verdict of a jury but with the award of commissioners of appraisal. The difference lies in the fact that whereas juries are composed of persons not disqualified, commissions are composed of members selected for their special qualifications. The objectionable matter was presented in print rather than orally and the award did not follow immediately upon the reception of the appeal to passion. Two of the commissioners were lawyers and as such by training largely immunized to oratorical display and verbal exhibitionism. In other words, the same considerations which require the meticulous protection of the jury against the pollution of the material upon which its verdict is reached do not in equal degree apply to a commission of appraisal. The method of selecting its members, the procedure which it follows, the freedom it enjoys to seek light outside the four corners of the record made before it, all distinguish the commission from the jury and bring the former within the class of ad hoc administrative agencies. Like courts they must be trusted to hear irrelevant matter and to determine its irrelevance.

It is for these reasons that I conclude that the offensive conduct of plaintiff's counsel should not result in setting aside the award. Because the misconduct here is flagrant I reach this conclusion reluctantly.

The objections urged by the several other claimants present no problems not already considered.

The award is confirmed.

Settle order on notice.