■ RICHARD ADAMS et al., Respondents, v "HORACE" ACKER, Individually and Trading under the Name of "HORACE" ACKER REALTY Co., et al., Defendants, and NORMAN LEVY et al., Appellants. FERNLEY REALTY CORP. et al., Third-Party Plaintiffs-Appellants, v GRAND UNION COMPANY, Third-Party Respondent-Appellant, et al., Third-Party Defendants.—Judgment, Supreme Court, Bronx County, entered on June 18, 1975, as resettled on August 12, 1975, after trial before Kraf, J., and a jury, modified, on the law and on the facts, to the extent of reversing same as against defendants, Levy and the City of New York, and ordering a new trial on the claim under section 205-a of the General Municipal Law against defendant Levy and on the common-law negligence claim against the city, with $60 costs and disbursements to abide the event, and affirming as against Fernley Realty Corp., with $60 costs and disbursements payable to plaintiffs. Judgment, Supreme Court, Bronx County, entered on September 8, 1975, dismissing the third-party complaint against Grand Union Co., unanimously affirmed, without costs, without disbursements, and appeal from order entered on April 25, 1975, granting third-party defendant, Grand Union Co.'s motion for a separate nonjury trial of the third-party complaint, unanimously dismissed, without costs and without disbursements. The issues raised on the appeal from the order of April 25, 1975 were reviewed and rejected upon the appeal from the judgment entered on September 8, 1975. The third-party complaint was properly dismissed. It is clear that the agreement between Grand Union and Fernley afforded Grand Union the right to cancel up to October 30, 1965 and that it did cancel on October 28, 1965, which cancellation it thereafter rescinded. The lease portion of such agreement was not to commence until May 1, 1966 and defendant, Levy, testified at a prior trial that the lease would not be valid until after the cancellation date and that prior to that date Grand Union "could not do anything there [the demised premises]. I wish they would have, but they couldn't do anything there until there was a definite lease". This testimony remains uncontradicted. Hence, there was no fact issue requiring submission to a jury and we conclude that the issue of law presented, which involved an interpretation of the agreement between the parties, was properly resolved by the trial court in favor of Grand Union. Grand Union had no duty with respect to the condition of the premises prior to October 4, 1965, the date of the second fire. The case as against defendant, Fernley, was properly submitted to the jury on the theories of common-law negligence and violation of section 205-a of the General Municipal Law and there is no reason in the record to disturb its purely factual determination with regard to this defendant. However, we would reverse as to defendants, Levy and the City of New York. The record was prejudicially tainted by the remarks made by counsel in the course of the trial. Plaintiffs' counsel, in his summation, stated to the jury that, if it absolved the city of liability, the plaintiffs might have no one to look to for payment of damages except Fernley Realty Corporation, which had been dissolved, urging as follows: "If you at some stage of this proceeding were to say, 'Well, sympathize with the City; let them out,' who will you be leaving these firemen with? An artful lawyer stood before you and for half an hour said—he said: 'If it's liability, it's Fernley; it's not Levy;' because he knows, and you know, too, that in 1967 Fernley was dissolved, there's a shell, it's nothing, and he owns the property himself now. What do they want us to do?" And again, in spite of the court's admonition, he stated: "If you should say to yourselves, 'Well, the major part of it is Levy

and the corporation,' if the City was of substantial cause, you have to find against the City too. And if you don't, when you come to deciding what these men should receive, do not allow your earlier thinking to make the final result futile and meaningless and leave them with a shell of a corporation and nothing more. * * * And that X Corporation that we talked about, the mythical corporation, you treat the City the same way, and you must, then they're in this case. But without them, your determination later on could well be futile." Similarly prejudicial were the oft-repeated inflammatory references of the Assistant Corporation Counsel, picked up and repeated by plaintiffs' counsel, to defendant, Levy, as a wealthy and successful business man and president of a large real estate company. The remarks made by experienced counsel in this close case were clearly prejudicial to defendants, Levy and the city, entitling both to a new trial. "It is time that the bar should realize that when counsel in a close case resort to such practices to win a verdict, they imperil the very verdict which they thus seek. * * * The misconduct was repeated. It cannot be deemed inadvertent or harmless." (Cherry Creek Nat. Bank v Fidelity & Cas. Co. of N. Y., 207 App Div 787, 791.) As far as Fernley is concerned the remarks, above mentioned, as a practical matter, inured to its benefit and, thus, we cannot conclude that it was in any way prejudiced thereby. Concur—Kupferman, J. P., Capozzoli and Lane, JJ.; Birns, J., dissents in part in the following memorandum: Although I agree that there should be a reversal and a new trial ordered as to the City of New York for the reasons expressed in the majority's memorandum, it is my position that the complaint against Levy should be dismissed. There appears no basis for concluding that section 205-a of the General Municipal Law was intended to create liability on the part of a corporate officer or stockholder merely by virtue of the fact that he was an officer and stockholder. Neither is there any evidence to establish that the corporate structure of Fernley should be disregarded so as to charge Levy, an officer and stockholder, with personal liability under that section (cf. Walkovszky v Carlton, 18 NY2d 414; Bartle v Home Owners Coop., 309 NY 103, 105–106). Further, the evidence was insufficient to demonstrate that Levy participated personally in any act which would give rise to liability under said section. I doubt, also, that the court properly charged the jury with respect to liability against the City of New York. In my view, as the corporation counsel contended in his exceptions to the charge, liability could not be ascribed to the City of New York merely because the building department had placed a violation upon the building and thus had notice of the illegal condition of the wall. (See Administrative Code of City of New York, § 643a-2.0.) Liability, however, could be imposed upon the city in the circumstances herein, under an appropriate pleading, only if it could be demonstrated that there was "actual and immediate danger that [the] structure or any part thereof [would] fall, so as to endanger life or property" and that the city had knowledge of such fact and failed to take appropriate steps to safeguard or prevent such occurrence (Administrative Code, § C26-201.0, subd [b]; see, also, Runkel v City of New York, 282 App Div 173).