Nicholas M. Pette, J.
This is an action by plaintiff for a judgment annulling his marriage to the defendant upon the ground of fraud.
Pursuant to an order of this court, Joseph Leahey, Esq., was duly appointed as special guardian ad litem to represent the defendant, an alleged incompetent and an inmate of Creedmoor State Hospital, Queens Village, New York. Anthony P. Busin, Esq., Assistant Attorney-General of the State of New York, appears on behalf of the Director of Creedmoor State Hospital. The special guardian duly qualified as such and interposed the usual form of answer to the complaint herein leaving the interests of his ward, the defendant, to the protection of the court.
The crux of the plaintiff’s complaint is: “ That at and before the marriage of the parties hereto, the Defendant fraudulently concealed from the Plaintiff that she had been an inmate of the Islip Mental Hospital, Islip, Long Island, New York”, and “ That Plaintiff married the Defendant believing her to be a woman without taint, mental disability and that she was on the date therof and at the time prior thereto mentally normal ’ ’, and that plaintiff would not have married defendant had he known that she had prior to the marriage been confined in a mental institution; that on or about October 11, 1956 plaintiff discovered that defendant had been an inmate of said Islip Mental Hospital prior to the marriage and immediately separated himself from the defendant thereafter.
This action was tried before me on April 10, 1959, when testimony was adduced on behalf of the plaintiff, with Anthony P. Busin, Esq., testifying and appearing as aforesaid. Upon motion of the special guardian the trial was adjourned for the purpose of producing the defendant as a witness in her own behalf, and an order to that effect was granted by this court on June 2, 1959. The trial was continued and concluded on June 8, 1959, when the defendant and Dr. Jeptha B. Macfarlane testified. The court then reserved decision and requested the special guardian to file his report which was sworn to July 2, 1959 and filed with the other filed papers in this action, on July 3, 1959.
*664 From the evidence adduced before it, the court finds that the parties hereto were married on October 13, 1951, in Jamaica, Queens County, New York; that for more than five years past plaintiff has been and still is a resident of Kings County, State of New York, and that defendant is a resident of Queens County, State of New York; that there are three children the issue of said marriage, Lorraine Schaeffer, now seven years old, Janet Schaeffer, who was six in April, and William Schaeffer, who is now four years old, all three being presently in the custody of the plaintiff; that there has been no judgment of divorce, separation or annulment granted between the parties hereto in any court of this State or any other State, Territory or Dependency of the United States or any foreign country.
It appears from the evidence, without dispute, and the court finds, that the defendant was admitted to Central Islip State Hospital, Long Island, New York, a mental institution, under the name of Lillian Sorenson on December 26, Í945 and that during the period between December 26, 1945 and May 28, 1949, she was intermittently placed on convalescent care and returned to the hospital from convalescent care on six different occasions, and that she was discharged from Central Islip State Hospital in May, 1950; that the admission diagnosis in December, 1945 was schizophrenia, catatonic type. It further appears from the evidence and the court finds that defendant was admitted to Creedmoor State Hospital on February 3, 1953 on an order of certification dated January 30,1953; also that she intermittently was placed on convalescent care and returned to Creedmoor State Hospital on three separate occasions and that she was last returned to Creedmoor State Hospital from convalescent care on December 6, 1957 and that up to the present time she continues to be a schizophrenic, catatonic type patient and inmate at that institution.
Dr. Jeptha R. Macfarlane, a physician at Creedmoor State Hospital testified that defendant was oriented and presently lucid, and that she would understand and appreciate the importance of an oath. When asked by the court in his opinion whether it would be proper for defendant to testify under oath, he answered: “Well, I feel that it is proper that she can testify, but her testimony must be evaluated in the light of the fact that she is a patient ”. He also testified: “ The one big problem we have with her is responsibility. She will have periods of alternating with very bizarre behavior; and she will go through periods in which she withdraws from reality completely, and the effect, the emotional tone in which she faces *665 things' is usually inappropriate ”. He further testified that the diagnosis was schizophrenia, catatonic type, and stated “ This catatonic type is an impulsive type. She will suddenly have outbursts and over activity, and then they will withdraw right in a shell. She does this many times, she has admitted.” He also testified that defendant was presently on medication, ‘ ‘ which does modify to a certain extent her behavior at this time ”.
Without objection, the special guardian, was permitted to make a statement for the record, in which he stated, inter alia, that in March, 1959 he went to Creedmoor State Hospital and in the presence of Dr. Macfarlane interviewed the defendant in the doctor’s office there; that in answer to his specific question: “ ‘ Did you ever tell your husband that you had been confined in a mental institution prior to your marriage! ’, she said ‘ Yes ’. And the substance of the reply was this: That there came an occasion before they were married that she talked to Mr. Schaeffer’s mother, as well as her own mother. And I am not too certain whether she said there was a sister or brother present. That I don’t recall. I have it in my notes. But I haven’t got them with me. But there was another party present besides the two mothers, the wife and Mr. Schaeffer ”. (Emphasis supplied.) However, when the defendant testified, she emphatically stated that when she made the alleged disclosure the only persons present were plaintiff, his mother and herself. The evidence that the defendant was an inmate of a mental institution and that her case was diagnosed as schizophrenia, catatonic type, was admissible to affect her credibility. (Spence v. Brown, 30 Hun 312, opinion in 17 Week. Dig. 518; Hammond v. Antwerp Light & Power Co., 132 Misc. 786.)
The court observed and carefully noted the demeanor of the parties as they testified. The court was impressed by the demeanor and testimony of the plaintiff and is convinced that he testified truthfully. The defendant’s testimony that she disclosed her confinement in a mental institution to the plaintiff prior to their marriage, which has been emphatically denied by the plaintiff, challenged the credulity of the court. In the light of her unfortunate affliction and the evidence of her intermittently being placed on convalescent care and returned to the' hospital, and the evidence showing a total lack of her being able to assume or accept responsibility, the inference seems inescapable that defendant is quite circumstantial and evasive relative to the facts of her past life. Although it may have been proper for her to attend the trial and to testify in this action, *666 the court cannot overlook that her testimony as to her disclosure of her confinement in a mental institution to plaintiff prior to their marriage, is probably a figment of her ability to rationalize, circumstantiate, and evade the main issues and facts.
To further test defendant’s credibility, it is significant to note the discrepancy between her testimony as to who was present when she made said disclosure to the plaintiff, and the story she told the special guardian as contained in his statement for the record herein. This discrepancy cannot be overlooked, and when weighed and considered in the light of her present illness, lack of responsibility and inability to assume responsibility, as testified to by Dr. Macfarlane, is of unconvincing probative value.
Science has found the means to cure folly, but none to restore a distorted mind. The defects of the mind, like those of the face, inevitably grow worse as we grow old. And as George Eliot wrote: ‘ ‘ The memory has as many moods as the temper, and shifts its scenery like a diorama ”.
The special guardian urges that plaintiff offered no corroboration on any material point, except the undisputed fact that defendant was confined to Central Islip State Hospital prior to her marriage to plaintiff. Upon all the evidence herein, the court finds that such contention is without merit. The court finds that plaintiff first discovered that defendant has been confined to Central Islip State Hospital on October 11, 1956 at the Aftercare Clinic on Schermerhorn Street, Brooklyn, when she told him that she had been confined to the Central Islip State Hospital prior to their marriage, and that from the time of such discovery he has never lived with the defendant as husband and wife. The court is of the opinion that the requirements of section 1143 of the Civil Practice Act as to the proof necessary for granting a judgment annulling a marriage have been sufficiently met by the plaintiff.
The special guardian’s contention that plaintiff’s failure to call his mother as a witness, whom defendant testified was present when she told plaintiff before their marriage that she had been confined to a mental institution, should be construed against plaintiff and that an inference should be drawn that had she been produced, she would have given testimony detrimental to the plaintiff’s cause of action, is without merit.
The special guardian’s conclusion that plaintiff’s mother was a witness under his sole control is not supported by any evidence adduced before the court. Furthermore, plaintiff emphatically denied that the defendant had ever disclosed to him prior to their *667 marriage that she had been an inmate in a mental institution. However, there appears to be no reason why this witness could not have been subpoenaed by the defendant, and it should also be noted that defendant’s mother who purportedly was also present at the time of the alleged disclosure could also have been subpoenaed by the defendant, since there was no evidence to show that such witnesses were not available to defendant. The law seems well settled that where a witness was equally available to the defendant, no inference adverse to the plaintiff by reason of his failure to call such witness, may be drawn by the trier of the facts. (Hayden v. New York Rys. Co., 233 N. Y. 34.)
The court is of the opinion and finds that the defendant failed to disclose to the plaintiff, prior to their marriage, that she had been confined in Central Islip State Hospital, a mental institution, and that had he known, prior to their marriage, of such confinement, he would not have married the defendant. The court finds that plaintiff first learned of the aforesaid confinement, subsequent to said marriage, and that after acquiring such knowledge, he has not lived with the defendant as husband and wife.
The plaintiff is entitled to a judgment annulling the marriage between plaintiff and defendant.
Permanent custody of the infant children is awarded to plaintiff.
The foregoing constitute the court’s findings of fact and conclusions of law, and the court’s decision pursuant to section 440 of the Civil Practice Act.
Interlocutory judgment should be rendered accordingly.