Seligson, Morris & Neuburger, Respondent, v. Fairbanks Whitney Corporation, Appellant.

First Department, April 1, 1965.

*Samuel M. Lane* of counsel (*Preben Jensen* and *Peter Brown* with him on the brief; *Casey, Lane & Mittendorf,* attorneys), for appellant.

*Milton Pollack* for respondent.

BREITEL, J. P.  Plaintiffs, a law firm, have recovered a judgment upon a jury trial verdict for $228,000 for legal services

concededly rendered by them to defendant. The dispute related solely to the quantum of recovery, defendant urging that the contingent percentage compensation provision of a written retainer agreement was not applicable to the particular services rendered. Defendant at all times conceded liability to pay for the services rendered.

On this appeal defendant does not question the sufficiency or adequacy of the evidence to support the verdict. Nor does it contend that the verdict exceeds the compensation which would be due if the written retainer agreement were found to apply to the particular services. It argues, however, that certain errors were committed upon the trial which rendered it unfair and that therefore they are entitled to a new trial.

There were no errors, and certainly none that was prejudicial. The judgment should be affirmed.

Involved in the retainer were efforts by a new management group in control of defendant Fairbanks Whitney Corporation, a corporation which had undergone serious internal and external vicissitudes while known as the Penn-Texas Corporation, to recover, in specie or by way of damages, three parcels of improved real property originally owned by subsidiaries of the corporation and improvidently transferred under sale-leaseback arrangements to certain outside interests. The improvidence in the transfer was associated with substantial charges of corruption, conflicts of interest, and suspected kickbacks.

The written retainer agreement, prepared by plaintiff lawyers, concededly covered the three parcels of real property, each of which was severally identified as being formerly the property of each of three wholly owned subsidiaries of the corporation. The lawyers were expressly retained to represent the corporation and the subsidiaries " in the assertion and prosecution of the said claims " and the taking of appropriate steps, including the bringing of civil actions. The retainer agreement provided for compensation by way of a retainer fee of $1,250 per month with additional retainer fees to be mutually agreed upon after the commencement of the taking of depositions. About these provisions there is no dispute; contradictory contentions exist only with respect to the still further provision for a contingent percentage compensation, which reads as follows: " An amount equal to 10% of the aggregate of the amounts, considerations or other benefits, present or future, received or realized by Penn-Texas Corporation and its said subsidiaries in and by such civil action or actions, by judgment, settlement or otherwise, or by or as a result of any other steps or proceedings which we may take in connection with the said claims."

Defendant's contentions related exclusively to whether this contingent fee provision applied also to the legal services rendered in connection with the property parcel owned by the subsidiary Pratt & Whitney. The occasion for the dispute is that with respect to this particular parcel a special kind of negotiation was utilized by defendant and the retained lawyers with the persons and the corporation to whom this property had been transferred. Because of the transferee's own involvement in impending public financing it was especially vulnerable to public scandal with respect to these allegedly improvident transfers. It was therefore thought, and the thought turned out to be quite correct, that indirect negotiations initially withholding public exposure would be more effective in bringing about a settlement than otherwise. Because of these distinguishing circumstances, defendant has contended that these special, and evidently successful, maneuvers were not intended to be covered by the contingent fee provision.

At the same time, as already noted, it has never been disputed that plaintiff lawyers rendered services in connection with this accomplishment and that they were entitled to some additional compensation for such services. The benefits represented by the reacquisition of the property, subject to discounting for present value, were variously valued from $4,000,000 to $4,700,000, depending upon what proof is accepted. The economic occasion for the dispute was that a contingent percentage compensation would, in defendant's opinion, give plaintiffs an extraordinary and disproportionate award. Thus, there is little dispute over the nature of the services rendered or the great value of the benefits derived. Defendant also disputed whose services brought about the reacquisition.

Defendant cites three errors upon the trial. The first is that counsel for plaintiffs, over objection, elicited proof of settlement negotiations and that defendant had made an offer of settlement in the sum of $50,000 to cover the services rendered in connection with the Pratt & Whitney property. The second is that counsel in summation argued extensively on the basis of defendant's failure to produce a number of witnesses, all of whom were former officers, attorneys or employees of defendant. The third is that although the court submitted to the jury the task of determining the meaning of the retainer agreement with respect to the alleged ambiguity whether the contingent fee provision covered the Pratt & Whitney transaction, it refused defendant's request that the jury be instructed that any ambiguity in the written retainer agreement should be construed against plaintiffs, the draftsmen of the agreement.

The first assignment of error is without basis. The reference to a settlement was first made by plaintiffs in their opening without objection. Indeed, defendant in its opening picked up the matter of settlement and sought to utilize it to defendant's advantage. It was only later, when testimony was elicited with respect to the settlement negotiations and the offer of settlement in the amount of $50,000, that objection was made. The objection was overruled, but still later plaintiffs' counsel voluntarily asked that the testimony relating to the $50,000 offer be stricken and that the jury then and there be instructed to disregard anything which had been brought to its attention with respect to those negotiations for settlement. Plaintiffs' motion was granted. If there had been any error it was cured by the withdrawal of the evidence and the instruction to the jury.

But there was no error. And the withdrawal of the evidence and the instruction were more than defendant was entitled to have. An offer of settlement made in attempt to compromise a disputed claim, as distinguished from admissions made in the course of negotiation, is not admissible for the public policy reason that an honest effort to buy one's peace should not be used as an admission of liability (*Smith* v. *Satterlee,* 130 N. Y. 677; *Tennant* v. *Dudley,* 144 N. Y. 504, 507; but as for admissions of fact made during the course of compromise discussions see *White* v. *Old Dominion S. S. Co.,* 102 N. Y. 660 [661]). That is not the situation in this case. Here, liability was always and still is conceded (cf. *Brice* v. *Bauer,* 108 N. Y. 428, 433). The only question in dispute was the applicability of the written retainer agreement and therefore the legal right to compensation in a certain but contingent amount for the services rendered by plaintiffs to defendant. The offer to pay $50,000 was therefore not an admission of anything that defendant was not admitting throughout the trial and does not still admit. Indeed, proof of such an offer was to defendant's advantage because it showed that defendant was not seeking to avoid an obligation to pay for services rendered but was disputing only the basis upon which compensation was to be made.

The second assignment of error, concerning argument by counsel for plaintiffs during summation upon the failure of defendant to call various witnesses with knowledge of the facts and who were former officers or employees, is equally without basis. The confusion is between argument by counsel and the instruction by a court to a jury as to the permissible inferences which may be drawn from the failure of a party to call witnesses. It is common, if not universal, practice for counsel for each side to argue to the jury upon the failure of the other side to produce

available witnesses. This has nothing to do with the strong kind of inference which may be drawn from the failure of a party to call a witness under its control who has knowledge of the facts. It is only with regard to the latter kind of inference, because it is so strong, that the party may ask the Trial Judge to instruct the jury that for the failure to produce such witnesses the jury is entitled, if it wishes, to give the strongest weight to the evidence already in the case in favor of the other side and which has not been, but might have been, effectively contradicted or explained by the absent witnesses.

The rule is well established that counsel may comment on the failure of the adverse party to call a witness who is under his control and whose testimony he could be expected to produce if it were favorable to him (88 C. J. S., Trial, § 184, pp. 362–363). This rule is applied, for example, where a plaintiff fails to call his own physician as a witness (*Brotherton* v. *Barber Asphalt Paving Co.*, 117 App. Div. 791). Often the uncalled witness is an employee, and in some, but not all, cases, adverse comment has been allowed even though the employment relationship has been terminated (Counsel's Comment—Witness Not Called, Ann. 68 ALR 2d 1072, 1078, § 4, subd. [a]). Although it is often said that an exception exists, and no comment is proper, if the witness is equally available to both sides, the existence of this exception has been criticized, on the ground that equal availability should allow either side to draw the inference (2 Wigmore, Evidence [3d ed.], p. 171, § 288). Moreover, the "equal availability" exception does not apply when there is a likelihood of bias of the witness in favor of the adverse party who failed to call him (*United States* v. *Beekman*, 155 F. 2d 580, 584 [per FRANK, J.]). Nor does the exception apply when the witness' testimony, if favorable, would naturally be a part of the case presented by the adverse party (*United States* v. *Jackson*, 257 F. 2d 41, 43–44 [per GOODRICH, J.]). Even when the witness is technically equally available to both sides, one authority, in an unusually penetrating analysis, reasons that "equality of favor is nearly always debatable, and * * * though the judge thinks the witness would be as likely to favor one party as the other, he should permit either party to argue the inference against the adversary" (McCormick, Evidence, § 249, pp. 534–536).

If counsel in summation were to be limited, as defendant argues, it would mean that trial counsel would be limited in asking the jury to draw inferences only of sufficiently high probability to warrant the Trial Judge in instructing the jury to that effect. It would mean, then, that with respect to such

a summation the party would be entitled to have the Trial Judge reaffirm all the inferences made by counsel in summation. Obviously. this is not the rule, nor could it be the rule. In simple illustration, it would mean that if an assault had allegedly been committed in the presence of 10 disinterested equally available persons neither side could refer to the fact that the other side had failed to produce any of the 10. For an illuminating discussion of the logical and legal problems involved in applying too mechanically the equally available witness rule see *People* v. *Moore* (17 A D 2d 57, per BERGAN, P. J.).

The authorities relied upon by defendant, with two exceptions, apply to the situation where the court has instructed the jury that it could draw inferences or the court itself has drawn the inference with respect to the failure to call witnesses not under the control of the aggrieved party (*Hayden* v. *New York Rys. Co.*, 233 N. Y. 34; *Schaeffer* v. *Schaeffer*, 20 Misc 2d 662, 666–667). One exception involves a memorandum decision in which the appellate court noted that the improper inferences had been made in argument by counsel and backed by the erroneous instruction by the trial court (*Bishin* v. *New York Cent. R. R. Co.*, 20 A D 2d 921). The other exception involved the grant of a new trial primarily because of counsel's persistent improper reference, after proper ruling by the court, to actual testimony at a prior trial, and only incidentally because of his comment on his adversary's failure to call witnesses who had testified at the prior trial (*Walter* v. *Joline*, 136 App. Div. 426).

To top it off, the court instructed the jury concerning these absent witnesses by charging, as follows:

" I also might mention to you at this time that there is no evidence in this case in the record that David Karr, Alphonse Landa, Harris Klein, Arthur Sheinberg, Judge Rifkind, Arthur I. Liman or Mr. Heymann are in any way under the control of the defendant.

" It is the law in New York that no inference can be drawn from the failure of a party to call a named individual as a witness, that the testimony of such witness if called would be favorable either to the plaintiff or the defendant."

In any event, if there had been impropriety in counsel's argument on summation, it was cured by the court's instruction which referred both to the absent witnesses by name, and to the proper general rule. But there was no impropriety, in the first instance.

The third assignment of error with respect to the alleged ambiguity of the retainer agreement is not without legal basis but is lacking in substantial prejudice. In the first place, it is

arguable whether the written retainer agreement was ambiguous. And it is therefore also quite arguable whether any evidence should have been received to vary the agreement's plain language which defendant concedes covered all three properties, including the one involved in this action, and that it covered achievements by way of negotiated settlement as well as by action. The fact is, however, that the trial court charged the jury on the question of ambiguity because it left to the jury the issue whether the written agreement covered the services rendered in connection with the reacquisition of the Pratt & Whitney property. If there was no ambiguity then, of course, this was a charge which redounded to the benefit of defendant and to which it was not entitled.

Assuming, however, that there is an ambiguity in the written agreement and that the jury was properly instructed to determine the effect of the agreement, instead of the court making the determination for itself as a matter of law, then, of course, the jury should have been charged as requested by defendant that the agreement should be interpreted strictly against its draftsmen, the plaintiffs (*Evelyn Bldg. Corp.* v. *City of New York,* 257 N. Y. 501, 513; *Gillet* v. *Bank of America,* 160 N. Y. 549, 554–555). This was, however, a failure, if it was a failure, without prejudice. The jury knew, as the trial court commented, that all the persons who participated in the making of the written agreement were sophisticated persons with extensive business, and some with legal, training. Moreover, the written agreement was one drafted especially for the occasion; it consisted of nothing more than two typewritten letter-size pages; it had none of the qualities associated with contracts of adhesion such as a printed form lease, insurance policy, or bill of lading, where the parties are not of equal bargaining power, where much of the language used consists of special words of art whose meaning is known only to specialists in the field, and where the length and format of the documents is such that the unsophisticated are likely to be trapped into undertaking or subjecting themselves to obligations never intended. The operative language has been described and quoted and is quite ordinary. Under the circumstances the refusal to charge on the particular standard with respect to ambiguity was without prejudice and it is unlikely that if the request had been granted the result would have been changed.

Moreover, the application of the agreement did not turn so much on the language used as on the context of events and circumstances in which it had been made. Defendant always conceded that the agreement covered the Pratt & Whitney property

insofar as its language was concerned. Defendant's ultimate contention was that it and not plaintiffs rendered the services which produced the reacquisition although to be sure plaintiffs had rendered compensable services in various stages of the negotiation and reacquisition. The bald ambiguity instruction to the jury would have given the jury no significant or meaningful standard.

Accordingly, the judgment in favor of plaintiffs should be affirmed, with costs and disbursements to plaintiffs-respondents against defendant-appellant.

McNALLY, J. (dissenting). The judgment herein should be reversed and a new trial directed on the ground of prejudicial errors in the admission of evidence, failure to charge adequately on the main issue and improper summation by plaintiff's counsel.

In an action for legal services plaintiff has been awarded a 10-to-2 verdict of $228,000. The action is grounded on a written contingent retainer dated January 23, 1959. The subject matter of the retainer were claims arising from sales and leasebacks of three parcels of real property originally owned by defendant. This suit relates to legal services in respect of one of the parcels located in Connecticut. Defendant reacquired said parcel in December, 1959. The reacquisition resulted from negotiations which were initiated by defendant during August, 1958, sometime before plaintiff law firm was retained.

Defendant's principal contention is that the reacquisition is not within the ambit of the contingent retainer. Considerable evidence was adduced in support of defendant's view and plaintiff likewise introduced substantial evidence in support of its claim that the contingent retainer related to said parcel and the benefits derived by defendant from the reacquisition. The summation to the jury dealt at length with said issue.

Plaintiff prepared the retainer. Implicit in the court's charge was ambiguity of the retainer of January 23, 1959 as to its application to the Connecticut property. The rule is that an ambiguous writing prepared by one is to be resolved against him. (*Gillett* v. *Bank of America,* 160 N. Y. 549, 554.) Unmistakable was the issue to which were directed several requests of the defendant, refused by the trial court, to charge the proposition that a retainer agreement prepared by an attorney capable of more than one construction is to be construed most strongly in favor of the client. Defendant was entitled to such a charge. (*McAvoy* v. *Schramme,* 238 App. Div. 225, 230, affd. 263 N. Y. 548.) The circumstance that defendant was represented by officials who are lawyers does not affect its right to have had

the jury so charged. (*Samuels* v. *Simpson*, 144 App. Div. 466, 469, affd. 207 N. Y. 643.)

It was prejudicial error to admit evidence of settlement talk by J. Lincoln Morris, a member of plaintiff law firm. The admissions were allegedly made April 12, 1960. Morris testified that Alfonse Landa, defendant's then chairman of the executive committee, on reading the retainer agreement of January 23, 1959, allegedly said "you [plaintiff] are entitled to a contingent fee". Morris also testified to a similar alleged admission at the time made by defendant's vice-president, who had executed the retainer agreement in behalf of the defendant. Immediately prior to the reception of said testimony, forewarned by pretrial proceedings wherein plaintiff inquired concerning the alleged admissions, defendant's trial counsel objected to evidence of the conversation on April 12, 1960 on the ground that it was privileged as compromise talk relating to a disputed liability. The objection was overruled and the evidence admitted. Evidence of negotiations having for their purpose the compromise of a dispute is inadmissible. (*Tennant* v. *Dudley,* 144 N. Y. 504.)

The basic issue was whether the reacquisition of the Connecticut property was within the scope of the retainer agreement. In the first instance the existence of the ambiguity was a question of law. (17A C. J. S., Contracts, § 617, p. 1254.) Implicit in the submission to the jury was a finding of ambiguity by the court. The tender of the issue to the jury, however, was attenuated by the opinions of defendant's officials testified to by plaintiff Morris disclaiming any ambiguity. The alleged admissions did not relate to a material fact, which is admissible even if part of the compromise talk. (*White* v. *Old Dominion S.S. Co.,* 102 N. Y. 660, 662.) The alleged admissions were "mere opinions * * * [which] come within the reasons of the rule excluding such admissions". (*Id.,* p. 663; *Gutkind* v. *Lueders & Co.,* 267 N. Y. 320, 329.)

Morris also was allowed, over the objection of defendant's trial counsel, to testify to compromise talks had with defendant's representatives on July 27 and August 2, 1960. The substance of the talks was an offer to adjust plaintiff's claim for services for $50,000 plus an increase of the $1,250 monthly retainer.

The offer of $50,000 was first brought to the jury's attention in plaintiff's opening statement. Defendant's opening rejoined that the offer was defendant's opinion of the reasonable value of plaintiff's services, not a concession of liability under the contingent retainer. If the plaintiff's evidence of the compromise talks had limited itself to the scope of the opening statements, there would be substance to plaintiff's contention that

the door had been opened thereon. However, the vice of the evidence given by the plaintiff Morris is that it is inextricably tied in with the alleged admissions of the opinions of defendant's officials that the contingent retainer agreement applied to the reacquisition of the Connecticut property. Thereby, the monetary offer of the defendant, in recognition of its liability for the reasonable value of plaintiff's legal services, was conveyed to the jury as an acknowledgment of liability under the contingent retainer agreement.

Plaintiff's subsequent motion to strike, limited to the testimony of Morris as to the talks on July 27 and August 2, 1960, which was granted, did not eliminate from the jury's consideration his testimony as to the alleged admissions of liability under the retainer agreement, made by defendant's officials on April 12, 1960. Plaintiff's said motion to strike, made five days after the testimony, and granted without informing the jury of the substance or significance of the testimony it was required to disregard, did not in any degree mitigate the prejudice to the defendant.

There is no substance to plaintiff's present contention that the stricken testimony was admissible because the liability was undisputed. This argument assumes the alleged concessions of liability implicit in the opinions of defendant's officials allegedly voiced on April 12, 1960 which, as has been demonstrated, should have been excluded.

Over repeated objections trial counsel for plaintiff in summation improperly argued inferences unfavorable to defendant on the basis of defendant's alleged failure to call witnesses equally available to both sides. (*Hayden* v. *New York Rys. Co.*, 233 N. Y. 34, 36; *Bishin* v. *New York Cent. R. R. Co.*, 20 A D 2d 921.) No unfavorable inference results from the omission to call such a witness. It is improper to so argue in summation. The instructions belatedly made did not serve to eradicate from the minds of the jury the effect of the summation of plaintiff's trial counsel thereon. (*Cohen* v. *Covelli*, 276 App. Div. 375, 377; *Walter* v. *Joline*, 136 App. Div. 426; *Bagully* v. *Morning Journal Assn.*, 38 App. Div. 522.)

Errors in the trial of a jury case do not require a new trial unless they are prejudicial. On this record, however, it might well be assumed that the insinuation of inadmissible evidence and improper arguments in summation were necessary to assure the verdict obtained. (*Kohlmann* v. *City of New York*, 8 A D 2d 598; *Nicholas* v. *Rosenthal*, 283 App. Div. 9; *Walter* v. *Joline*, *supra*, p. 429.) Moreover, the omission to charge, as requested, that an ambiguous retainer prepared by an attorney is to be

construed most favorably to the client, in a closely contested case such as this, is in itself prejudicial error.

VALENTE, STEVENS and EAGER, JJ., concur with BREITEL, J. P.; McNALLY, J., dissents in opinion.

Judgment affirmed, with $50 costs to respondent.