JOHN BISCHERT, Plaintiff, and MALCOLM PERRY, Respondent, *v.* LIMOUSINE RENTAL SERVICE et al., Appellants. (And 2 Other Actions.)

Third Department, March 9, 1970.

*Vander Voort, Cline & MacVean* (*V. Frank Cline* of counsel), for Limousine Rental Corporation and another, appellants.

*Bower, O'Connor, Taylor & Gardner* (*Benjamin H. Siff* of counsel), for Swan Lake Poultry Corp. and another, appellants in Action No. 2.

*Appelbaum & Eisenberg* (*Bertram W. Eisenberg* of counsel), for respondent in Action No. 1.

*N. Le Van Haver* and *Richard B. Overbagh* for respondent in Action No. 2.

GREENBLOTT, J.  These are appeals (1) from a judgment of the Supreme Court in favor of plaintiffs Malcolm Perry and Malcolm Perry, Jr., entered February 27, 1969 in Sullivan County, upon verdicts rendered at a Trial Term, and (2) from orders which denied defendants' motions to set aside the verdicts.

These actions arose out of a collision between a bus owned by Limousine Rental Service, driven by Richard Ferber, and a tractor-trailer owned by Swan Lake Poultry Corp., driven by John Bischert, which occurred July 21, 1964 on old Route 17 in Sullivan County.  The bus was proceeding easterly up a hill on the two-lane highway, and the tractor-trailer was proceeding downhill around a curve to its right.  The trailer struck the left rear side of the bus, then rolled over on its left side and down an embankment.

Bischert, the truck driver, and a passenger, Malcolm Perry, sued the bus company and bus driver (Action No. 1).  Another passenger in the truck, Malcolm Perry, Jr., who was six years old at the time of the accident, sued the owners and drivers of both vehicles, and his mother sued for medical expenses (Action No. 2).  Swan Lake's insurance company also sued to recover for property damage to the tractor-trailer (Action No. 3).

Bischert and Perry each testified that the truck was proceeding down the hill in the right-hand lane at about 20 miles per hour and that as they came around the curve, they saw the bus about 300 feet away, straddling the double center line.  Bischert testified that he applied the truck's brakes and turned to the right, but the rear part of the trailer hit the bus, and then the trailer tipped over.  His testimony was substantiated by Perry.

The bus driver testified that his speed was about 40 miles per hour and that his vehicle was in the proper lane.  He said that when he first saw the tractor-trailer, its left wheels were on the center line, that the driver of the tractor then "brought the tractor back to his side of the road, and the trailer leaned out, trailer continued across into my road" and struck the mirror, windows on the left side of the bus.  It was his testimony

that when the trailer swerved, only the top of the trailer tilted into his lane, not the tires. Ferber testified that he pulled to his right prior to the collision.

The jury awarded damages in favor of the infant respondent Malcolm Perry, Jr. in the amount of $30,000 and in favor of his father, Malcolm Perry, Sr. in the amount of $20,000.

The appellant bus company contends that the award to the infant respondent was grossly excessive and that in his summation, counsel for the infant respondent made improper comments as to damages.

Following the accident, the infant respondent's condition was described by his doctor as "critical". He was unconscious at the scene of the accident, having sustained a concussion and failed to recognize his mother until two or three days later. He also received multiple contusions and abrasions, the most severe of which was a "through and through" laceration of his left upper lip, extending into the left side of his face. There was much bleeding, requiring seven sutures. The attending physician, testifying four and a half years after the happening of the accident, opined that the scars had reached the maximum amount of recovery. Moreover, it was the doctor's belief that the deformity would increase as the boy grows and develops into manhood, since the scar tissue would not expand as the face enlarges.

We are also impressed, as the jury probably was, by the fact that there is a complete absence of any testimony in the record, on behalf of the defense, that would even tend to controvert the testimony of the attending physician. There can be no doubt that the jury relied heavily upon these factors in arriving at its verdict.

Since appellants offered no medical testimony in opposition to the strong medical proof of the infant plaintiff, we cannot give credence to their present contentions. The jury observed the scars and the trial court denied a motion to set aside the verdict. The language of this court in *Slater* v. *Town of Rochester* (31 A D 2d 590) is appropriate: "While the verdict might be regarded as excessive under some circumstances, this court cannot indulge in speculation or surmise, but on the present record must rely upon the judgment of the jury and the trial court."

Assuming, *arguendo,* that error was committed by the infant respondent's counsel in his summation to the jury, it was harmless error and was promptly corrected by proper instructions from the court.

As to the verdict in favor of the respondent Perry, Sr., the appellant bus company contends that it was against the weight of the evidence, the result of misunderstanding and the result of a summation which aroused the sympathy and prejudice of the jury.

Both Bischert, the truck driver, and respondent Perry, Sr., testified that when they rounded the curve they saw the bus partly in their lane of travel, proceeding at a speed in excess of 25 miles per hour, the recommended speed at that point. While this testimony was contradicted by other witnesses, it would, if believed, support the verdict that the negligence of both drivers contributed to the collision. Since the jury could properly have resolved the question of credibility against the bus company, the verdict is not against the weight of the evidence.

We conclude after an examination of the summations in their entirety, that the comments of counsel for the respondent Perry, Sr., were not improper under the circumstances.

Nor do we find any error in the procedure adopted by the trial court when the jury reported its verdict (cf. *Fairchild* v. *Cervi Bros. Trucking Co.,* 1 A D 2d 508). We find no evidence that any juror was required to make up his mind in open court. It is proper practice for the trial court to send the jury back for reconsideration of its verdict in order to correct an obvious misunderstanding (cf. *Bernard* v. *Seyopp Corp.,* 11 A D 2d 140, affd. 9 N Y 2d 676).

We have examined the remainder of the appellants' contentions and find them to be without merit.

The judgment and orders should be affirmed, with costs.

REYNOLDS, J. (dissenting). The judgment entered upon verdicts for Malcolm Perry (Action No. 1) and Malcolm Perry, Jr. (Action No. 2) should be reversed on the law and the facts, and a new trial ordered. The judgment in favor of Malcolm Perry, Jr. is tainted by the improper tactics of his counsel in his summation which was compounded by the fact that the improper tactics were discussed before summation in the trial court's chambers and the court had informed counsel that they were improper and not to use them. This is admitted. The judgment in favor of Malcolm Perry in Action No. 1 was also not legally reached. The summation of Malcolm Perry's counsel was so prejudicial a new trial is required. The jury's verdict in that case was originally one of no cause of action. The statements of Malcolm Perry's attorney in the presence of the jury as to the inconsistency of the verdicts and the failure of the court to properly poll and charge the jury anew were unwarranted

intrusions into the private decision-making province of the jury and constituted reversible error. When the court ordered the jury back to the jury room after plaintiff's counsel suggested that the verdict was inconsistent without further instruction, it apparently acquiesced in this suggestion which was tantamount to a direction to the jury that it return a verdict for the plaintiff. Defendants' rights were preserved by an immediate exception.

The appellant bus company contends that counsel for the infant respondent, in the course of his summation, improperly interjected the " unit-of-time " basis for measuring damages and his own opinion as to the amount of damages his client was entitled to. These errors mandate reversal.

In his summation, counsel for the infant respondent made this comment, followed by an objection by appellant's counsel, and statement by the court: " So I say to you that when you talk about how much you are going to award this little boy, that you must take into consideration the fact that as the years pass, he becomes 15, 18, 20, 30, and if God willing, 55 or 60 or 70, these scars are going to be worse; this deformity is going to be worse. And every day of his life, everytime he looks in a mirror * * * that mark is going to be there for the rest of his days. * * * I say to you that in considering this you must consider this in the light of every-day experience. I don't know how much a year. Two hundred? Three hundred? Five hundred dollars a year? I don't know how much you are going to think about. But I do say to you, I feel, and I feel in all good conscience — and I know you are going to be guided by your own good conscience — I think any award in the neighborhood of twelve or fifteen thousand would be ridiculously inadequate.

" Mr. Braiman: Your Honor, may I object to Mr. Haver invading grossly, the jury's province in this case.

" The Court: Well, the jury are not bound by the opinion of counsel and are to disregard it."

The courts of this State have held that it is improper in summation, to suggest to the jury that it may follow a particular mathematical guide or fix damages for pain and suffering on a " unit-of-time " basis. (*Jacobs* v. *Peress,* 24 A D 2d 746; *Paley* v. *Brust,* 21 A D 2d 758.) Pain and suffering varies from case to case depending upon the nature and extent of injuries. Therefore, it is impossible to lay down a precise formula by which pain and suffering may be properly measured and reduced to dollars and cents. The matter must be left to the judgment of the jurors. Here, the infant respondent's counsel suggested not one particular unit-of-time basis for fixing damages, but three. It has also been held improper for plaintiff's counsel to mention the amount

of damages claimed or expected (*Laughing* v. *Utica Steam Engine & Boiler Works,* 16 A D 2d 294).

The impropriety was further compounded by the fact that the infant respondent's counsel knew that he could not use these tactics since the matter was discussed before summation in the trial court's chambers, and the court informed counsel that it was improper.

As to the verdict in favor of respondent Perry, Sr., the appellant bus company contends that it was the result of misunderstanding, against the weight of the evidence, and the result of a summation which aroused the jury's sympathy and prejudice.

After deliberation the jury returned, and the forewoman announced a verdict of $30,000 for the infant, Malcolm Perry, Jr., against all the defendants, and separate verdicts of no cause of action as to the others.

Counsel for Malcolm Perry, Sr. immediately stated: "Well, Your Honor, I am going to move that the jury be instructed the verdicts in 1 and 2 are inconsistent, and I request that the jury be sent back to resolve that."

The court replied: "The only question would be in the case of Malcolm Perry, Sr., and apparently the jury have found that he was guilty of contributory negligence."

Counsel for Perry then asked for a poll of the jury, stating that in his opinion, his client's case was misunderstood by the jury. Juror No. 1 stated: "There was a very big misunderstanding here. We assumed the two men as one action."

Perry's counsel then requested that the charge be read again to the jury with respect to his client's status. This was not done. The poll of the jury indicated that four of them agreed with the verdict as announced, six disagreed and two said they would have to reconsider. The court then sent the jury back to the jury room in the action of Malcolm Perry, Sr. against Limousine Rental Corp. and Richard Ferber. The attorney for the bus company then moved for a mistrial on the ground that the jury was obviously confused, which was denied. Within an hour the jury returned a verdict of $20,000 in favor of Malcolm Perry, Sr. against the bus company and its driver. Motions to set aside the verdicts were denied.

The events leading to the final rendition of the verdict in favor of this respondent require that it be set aside. The statement of respondent's counsel that the verdicts were inconsistent, and the court's direction that the jury return to the jury room, without further instruction, made it appear that the court acquiesced in this statement. This was tantamount to a direction to the jury that it return a verdict for the plaintiff. "It

is not the function of counsel to instruct the jury on the law." (*Frechette* v. *Special Magazines*, 285 App. Div. 174, 178.) The proper procedure was to charge the jury appropriately and direct them to retire for further consideration of the case. It should also be pointed out that defense counsel took timely exception to the trial court's actions prior to the time the verdict was returned and moved for a mistrial. (Cf. *Bernard* v. *Seyopp Corp.*, 11 A D 2d 140, affd. 9 N Y 2d 676.)

In the course of his summation, respondent's counsel twice referred to his client's poverty. The first remark contrasted the resources available to the plaintiff and the defendant with which to investigate the accident. The second remark was made in reply to defense counsel's attack on Perry's credibility, to the effect that he was interested in the result and had given conflicting testimony before the Workmen's Compensation Board as to his employment status. He stated: " Counsel for the bus company talked about Perry's motivation, and that's what he said; he used the word ' motivation ' three or four times. And he suggested the motivation was money for Perry. I guess I am entitled to give my thinking on what motivation is. My thinking is this: I think sometimes we lawyers with our pressed suits and our white shirts are very quick to condemn people in court. But if he says money is the motivation, I suggest to you that having a wife and three kids at home and being out of work for six months is also motivation."

Referring to the wealth or poverty of a party, or contrasting the financial status of one with the other in the course of argument (except where relevant to the issues), is an improper appeal to the sympathy or prejudice of the jurors, requiring a new trial (*Depelteau* v. *Ford Motor Co.*, 28 A D 2d 1178; *Rendo* v. *Schermerhorn*, 24 A D 2d 773; *Walsh* v. *Frankenthaler*, 186 App. Div. 62).

Counsel for respondent contends that he was entitled to make retaliatory remarks to answer the arguments of his adversary. This argument is not convincing since there is no authority for the proposition that improper conduct by a party gives his adversary unlimited leeway to appeal to the jury's prejudices.

While the court in general does not dispute that the conduct of the respondent's counsel was improper and that the improprieties were reprehensible, the majority proposes to affirm despite the innocuous statement for affirmance, for one reason, and one alone, that is, because they felt there was no prejudice since the verdicts in their opinion were not excessive. I cannot agree with this reasoning. Litigants have a right to have their cases determined on the facts and the law applicable and counsel

should follow the rules. This applies to defendants as well as plaintiffs. The prejudicial remarks of Malcolm Perry, Jr.'s counsel made, as is conceded, with the design to influence the jury's consideration of damages and with the prior admonition of the court not to use such tactics cannot be swept under the rug with the statement that the verdict was not excessive. '' When misconduct of counsel in interrogation or summation so violates the rights of the other party to the litigation that extraneous matters beyond the proper scope of the trial *may* have substantially influenced or been determinative of the outcome, such breaches of the rules will not be condoned. (*Simpson* v. *Foundation Co.*, 201 N. Y. 479; *Cherry Creek Nat. Bank* v. *Fidelity & Cas. Co.*, 207 App. Div. 787 (on summation); *People* v. *Carborano*, 301 N. Y. 39; *Loughlin* v. *Brassil*, 187 N. Y. 128.) '' (*Kohlmann* v. *City of New York*, 8 A D 2d 598, emphasis supplied.) This makes sense. Any other position would encourage constant violations by counsel and would create unjust results, and, of course, the statement that the verdict was not excessive in the Malcolm Perry, Jr. action, while immaterial, just is not so. While the boy had an initial unconsciousness at the scene, no permanency of any kind is claimed except a scar at the side of his mouth requiring but seven stitches to close. The scar was not keloid. There is a photograph of the boy and scar in evidence. *Slater* v. *Town of Rochester* (31 A D 2d 590) is plainly inapposite. There was no pain, disability or other impairment claimed at any time after the brief hospitalization. The verdict of $30,000 is grossly excessive and affirmatively shows that the verdict may have resulted from the improper tactics of counsel and was based on bias, prejudice or sympathy.

HERLIHY, P. J., STALEY, JR., and SWEENEY, JJ., concur with GREENBLOTT, J.; REYNOLDS, J., dissents and votes to reverse and order a new trial, in an opinion.

Judgment and orders affirmed, with costs.