Sally SMITH, Plaintiff,

v.

PIEDMONT AIRLINES, INC.,
Defendant.

No. 88 Civ. 0588 (CHT).

United States District Court,
S.D. New York.

Oct. 10, 1989.
As Amended Nunc Pro Tunc
March 28, 1990.

Herbert William Fischman, P.C., of counsel, New York City, for plaintiff.

Quirk and Bakalor, P.C. (David A. Rabbino, of counsel), New York City, for defendant.

TENNEY, District Judge.

This case involves a personal injury aboard an airplane. It was tried before a jury which found in favor of the plaintiff, Sally Smith, in the amount of $88,860.82. Defendant Piedmont Airlines, Inc. ("Piedmont") has moved for a judgment notwithstanding the verdict or, in the alternative, a new trial. For the reasons set forth below, the motion is denied.

## BACKGROUND

On October 11, 1987, plaintiff was a passenger occupying seat 9D on Piedmont's flight 312D traveling from Norfolk to New York's LaGuardia airport. She alleges that upon landing at LaGuardia, the compartment over her seat opened, spilling its contents onto her head, causing various injuries.

After receiving instructions on theories of negligence and res ipsa loquitur, the jury returned a verdict of $88,860.82 for the plaintiff.

Defendant contends that the plaintiff did not introduce sufficient evidence of the requisite elements of res ipsa loquitur to support the jury's verdict. Piedmont also contends that the jury's award was excessive in light of the evidence of plaintiff's medical condition adduced at trial. Finally, Piedmont asserts that the plaintiff's summation was improper on a number of grounds.

## DISCUSSION

### A. Res Ipsa Loquitur

■ A res ipsa loquitur charge allows the jury to infer negligence on the part of the defendant in the absence of direct proof to that effect if the plaintiff can prove that: (1) the incident was unlikely to occur in the absence of negligence, and (2) the agency or instrumentality causing the injury was in the exclusive control of the defendant at the time of the incident. *Sanchez v. American Airlines, Inc.*, 106 Misc.2d 1010, 1013, 436 N.Y.S.2d 824, 826 (Civil Ct.1981); *Abbott v. Page Airways, Inc.*, 23 N.Y.2d 502, 510, 245 N.E.2d 388, 394, 297 N.Y.S.2d 713, 718 (1969). Defendant contends that plaintiff did not carry her burden of proof on either element.

In order for a court to overturn a jury's verdict based upon a failure to introduce sufficient evidence, it must find that the verdict "could only have been the result of sheer surmise and conjecture." *Mattivi v. South African Marine Corp.*, 618 F.2d 163, 168 (2d Cir.1980). The standard for granting a new trial is somewhat less stringent; a court need find only that "the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice." *Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970 (2d Cir.1987). The jury's verdict should stand in this case, even under the new trial standard.

The evidence at trial amply supports the jury's finding on the special verdict form that plaintiff established the res ipsa elements. Defendant asserts that the plaintiff failed to prove this accident would not have occurred in the absence of negligence. It does not provide any reasonable alternatives to the jury's conclusion that it could only have resulted from negligence. Common sense suggests there were at least three possible explanations for the malfunction: (1) the latching mechanism on the compartment was defectively designed or manufactured; (2) the mechanism was maintained improperly by Piedmont; or (3) the compartment was closed improperly prior to take-off.

Defendant argues that the testimony at trial did not eliminate the possibility that a design or manufacturing defect caused the bin to drop open and it claims, therefore, the jury could not have permissibly found that plaintiff satisfied the res ipsa elements. Specifically, Piedmont notes that it could not be held liable for the negligence of the designer or manufacturer unless it had received notice of any such defect. *See, e.g., Espinosa v. A & S Welding & Boiler Repair, Inc.*, 120 A.D.2d 435, 436, 502 N.Y.S.2d 451, 452 (1986); *Sirigiano v. Otis Elevator Co.*, 118 A.D.2d 920, 921, 499 N.Y.S.2d 486, 488 (1986). This products liability argument, however, has no role in this case and does not change the court's opinion that the res ipsa charge was appropriate or that there was sufficient evidence to support the jury's findings.

At the outset, the court notes that defendant never raised the substantive defense of lack of notice in any of its pleadings and never attempted to bring in third-party defendants against whom to assert claims based on products liability theories. Moreover, when plaintiff requested the res ipsa charge, defendant never raised the design or manufacturing defect argument in opposition, relying only on the argument that the bin might have been opened by another passenger. Defendant did claim, in general, that "[t]here is no expert testimony to explain that some form of negligence caused the alleged incident herein," continuing: "[n]or is there any testimony that the type of occurrence herein would not normally occur without negligence on the part of PIEDMONT." Defendant's Pre-trial Order, Exh. A. at 3–4 (Trial Memorandum).

These conclusory observations concerning pre-trial discovery did not specifically raise any notice issue, and counsel for Piedmont did not advance this theory when the court heard argument on the res ipsa issue. Therefore, the court is reluctant to inject an issue into the case after judgment has been entered that was never raised at any prior point in the proceedings. *See* 5A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 51.04 at 51–33 to 51–41 (2d ed. 1989); 6A *id.* ¶ 59.08[2] at 59–85 to 59–88.

Nevertheless, even in its belated form, defendant's argument does not vitiate the

jury's res ipsa findings. While both plaintiff and defendant could have brought the manufacturer of the overhead bin or aircraft into the case, neither party elected to do so. This suggests to the court that neither considered this newly-articulated product liability issue to be a part of the case. The facts developed at trial reveal that the possible existence of a design or manufacturing defect in the bin is remote, at best.

If the design of the bin were defective, one might have expected all of the other bins on flight 312D to have opened as well, yet there was no such testimony adduced at trial. In fact, if design were truly a cause, one might wonder why the similarly designed bins had not been involved in numerous incidents like the one at issue here. If this were the case, it seems reasonable that plaintiff would have developed evidence of it during discovery and made it a part of her case. Even if plaintiff did not, defendant, who was in a better position to investigate this as a possible defense, never incorporated it into its case.

That this bin was manufactured defectively is equally as unlikely. Piedmont argued at trial that had there been a problem with the overhead bin, its maintenance procedures would have revealed it. In fact, there was testimony that this bin had been inspected many times prior to this incident and, according to Piedmont, not once was any problem noted.

With all these facts in mind, the court must conclude that had there been a lurking design or manufacturing defect it surely would have been discovered before the date of this accident. Therefore, there is absolutely no basis to infer that such a defect existed and the court finds the possibility that it may have caused or contributed to the opening of the bin far too speculative to have any bearing on the res ipsa issue. *See* Schwartz, *New Products, Old Products, Evolving Law, Retroactive Law,* 58 N.Y.U.L.Rev. 796, 832 (1983) (plaintiff should be required to address only the most obvious causes of a malfunction).

With a hidden defect eliminated as a possible cause of the incident, the only remaining explanations are that the flight attendants did not make sure, as specified in their manual, that the overhead compartment was fully closed, or that Piedmont negligently maintained the latch. In either case, the jury could reasonably infer from its common experience that defendant's negligence had to have been the causative factor. In fact, it is through the lens of ordinary experience that the jury is to make this judgment. *Dermatossian v. New York City Transit Authority,* 67 N.Y.2d 219, 226, 492 N.E.2d 1200, 1204, 501 N.Y.S.2d 784, 788 (1986); *Prosser & Keeton on Torts,* § 19.5 at 224 (5th ed. 1984).

In addition, airlines owe their passengers the highest duty of care. *See, e.g., Sprayregen v. American Airlines, Inc.* 570 F.Supp. 16, 17 (S.D.N.Y.1983); *Fleming v. Delta Airlines,* 359 F.Supp. 339, 341 (S.D. N.Y.1973). In light of this very high standard, it was entirely reasonable for the jury to conclude that an overhead bin would not normally open during a flight and empty its contents on a passenger's head in the absence of negligence on the part of the airline.

Piedmont also contends that the compartment was not in the exclusive control of the defendant since its witnesses testified that passengers were invited to open and use the compartment during the flight. Plaintiff testified, however, that no one went into the compartment during the flight. Plaintiff also testified that since she remained seated for the duration of the flight, she would have noticed had anyone opened the compartment. The jury was entitled to believe the plaintiff's testimony and for the purposes of this motion, the court must view the evidence in the light most favorable to the nonmoving party. *Calamia v. City of New York,* 879 F.2d 1025, 1030 (2d Cir.1989).

Since there was testimony that no one opened the overhead compartment during the flight and that the flight attendants checked the condition of the compartments before the final descent, the jury could reasonably have concluded that Piedmont retained exclusive control over the bin, at least after the point at which passengers

were no longer allowed out of their seats. The exclusive control requirement exists to insure that the defendant is identified with probability as the party responsible for the injury. "All that should be required in this respect is that defendant have the right to control and the opportunity to do so." *Pollock v. Rapid Indus. Plastics Co.,* 113 A.D.2d 520, 527, 497 N.Y.S.2d 45, 50 (2d Dep't 1985) (quoting Fisch, New York Evidence, 2d ed., § 1138 at 656); *see Prosser & Keeton on Torts,* § 39 at 250 (5th ed. 1984).

Defendant draws an analogy between this case and *Dermatossian v. New York City Transit Authority,* 67 N.Y.2d 219, 492 N.E.2d 1200, 501 N.Y.S.2d 784 (1986), where the New York Court of Appeals held that res ipsa was improperly charged in the case of a defective grab handle on a public bus. *Dermatossian* is distinguishable because the plaintiff in that case could not exclude the possibility that the handle had been used and damaged by another passenger. In the instant case, the plaintiff testified that no one used the overhead compartment during the flight, thereby eliminating the possibility that control was transferred by Piedmont to one of the passengers. Therefore, the jury had sufficient evidence upon which to find that plaintiff had established both elements of the res ipsa loquitur doctrine.

## B. Damages

■ Defendant contends there was also insufficient evidence adduced at trial to support the jury's award of damages. In reviewing a claim of excessive damages, the court must accord substantial deference to the jury's award. *See Wheatley v. Ford,* 679 F.2d 1037, 1039 (2d Cir.1982). A judgment must be upheld unless damages are so excessive as to shock the judicial conscience. *Martell v. Boardwalk Enterprises, Inc.,* 748 F.2d 740, 750 (2d Cir.1984).

Piedmont's arguments essentially contrast plaintiff's testimony with the contrary evidence developed during cross-examination and presented during defendant's case. For example, it notes that the plaintiff did not go to her doctor until ten days after the accident. Plaintiff testified, however, that she felt pain as soon as the accident occurred but wanted to see if the pain would abate before going to her doctor. In fact, when she eventually saw her regular physician, Dr. Ricciardone, she was diagnosed as having paraspinal muscle spasms. The mere fact that the plaintiff did not visit her doctor right away does not mean, as a matter of law, that she was not suffering from a compensable injury.

Nor does the fact that defendant's medical expert offered a conflicting opinion concerning plaintiff's condition mean that the jury was not entitled to credit the testimony of plaintiff's doctors. Piedmont contends that a medical procedure known as an EMG taken in February of 1988 showed no evidence of cervical radiculitis and that nuclear magnetic imaging films of plaintiff's neck were subject to conflicting interpretation. Dr. Green, one of the plaintiff's treating physicians stated, however, that he had treated the plaintiff for approximately five months and had diagnosed cervical radiculitis as well as myofascial pain syndrome.

Dr. Guthrie, another of the plaintiff's treating physicians, testified that the plaintiff suffers from a permanent disability of her cervical spine that will deteriorate with age. He based his opinion on plaintiff's complaints of pain and limited range of motion in her cervical spine. He also found a reversal of the normal lordotic curve. The jury had ample opportunity to consider the diagnosis by plaintiff's witnesses in light of the facts developed by the defendant. Its resolution of the medical disagreement is not reviewable by the court. *See Proteus Books Ltd. v. Cherry Lane Music Co.,* 873 F.2d 502, 508 (2 Cir.1989).

Finally, Piedmont contends that plaintiff did not miss any substantial time from work, arguing that she could not have been seriously injured or experienced significant pain. Plaintiff testified, however, that since the accident, she has missed work much more frequently than before her accident, as confirmed by her employer, Angus Cooper. Plaintiff also testified that she was handicapped in her ability to pursue

her acting career in that she cannot accept physically or mentally demanding roles. In addition, plaintiff testified that she has suffered a significant change in lifestyle, a proper basis upon which to award damages. *See Kavanaugh v. Nussbaum*, 129 A.D.2d 559, 564, 514 N.Y.S.2d 55, 59 (2d Dep't 1987); *Ledogar v. Giordano*, 122 A.D.2d 834, 838, 505 N.Y.S.2d 899, 903 (2d Dep't 1986). Plaintiff did not submit a claim for lost earnings, so defendant's arguments concerning the minimal impact on her work schedule were considered by the jury only as evidence that she could not have been in as much pain as she claimed. Contrary to what defendant claims, however, it is not dispositive of the question. *See Schnarch v. Owen*, 124 A.D.2d 372, 374, 507 N.Y.S.2d 315, 317 (3d Dep't 1986). Although generous, the jury's award of damages is not so high as to shock the judicial conscience and must stand.

### C. Plaintiff's Summation

The trial court has broad discretion to determine when the conduct of counsel is so improper as to warrant a new trial. *See Matthew v. CTI Container Transp. Int'l Inc.*, 871 F.2d 270, 278 (2d Cir.1989). Although the conduct of plaintiff's counsel during summation is distressing, the court does not believe that it "irreparably taint[ed]" this proceeding, *Smith v. National R.R. Passenger Corp.*, 856 F.2d 467, 470 (2d Cir.1988), and concludes that counsel's behavior was not serious enough to justify any remedial action.

■ Piedmont contends, for example, that plaintiff's repeated statements regarding defendant's failure to call certain witnesses and to produce certain evidence improperly implied that defendant had not been completely candid in its presentation of the case. Nevertheless, during summation, counsel may comment on a party's failure to call a witness under its control whose testimony was expected to have been favorable. *Seligson, Morris & Neuburger v. Fairbanks Whitney Corp.*, 22 A.D.2d 625, 630, 257 N.Y.S.2d 706, 710 (1st Dep't 1965). Plaintiff's statements were fair comment on the evidence, and did not

divert the jury's attention from the proper issues in the case. *See Weinberger v. City of New York*, 97 A.D.2d 819, 820, 468 N.Y. S.2d 697, 699 (2d Dep't 1983); *Bishin v. New York Cent. R.R. Co.*, 20 A.D.2d 921, 921, 249 N.Y.S.2d 778, 779 (2d Dep't 1964).

■ Piedmont also refers the court to the comments of plaintiff's counsel addressing the proper amount of damages to be awarded: "You have to try to feel what she must be going through ...," Tr. 34, and other similar statements. While summation comments may not arouse the sympathy or prejudice of the jury, *see Bischert v. Limousine Rental Service*, 33 A.D.2d 355, 358, 308 N.Y.S.2d 200, 203 (3d Dep't 1970), mere admonitions to the jury to consider the amount of pain the plaintiff experienced is an acceptable technique for encouraging a jury to award appropriate damages. In addition, any improper comments were cured by the court's charge to the jury which instructed it to "weigh and consider the evidence without regard to sympathy, prejudice, or passion, for or against any party." *See Joan W. v. City of Chicago*, 771 F.2d 1020, 1023 (7th Cir. 1985).

■ Piedmont also argues that counsel for plaintiff impermissably vouched for the credibility of plaintiff's physician when he expressed to the jury his personal opinion about her character. *See* Tr. 22. Again, while counsel's conduct was improper, it does not require the court to overturn the jury's verdict, because his comments were neither so lengthy nor so numerous to have had any realistic bearing on the jury's deliberations. *See Liebman v. Otis Elevator Co.*, 145 A.D.2d 546, 547, 536 N.Y.S.2d 100, 101 (2d Dep't 1988); *Kavanaugh v. Nussbaum*, 129 A.D.2d 559, 561, 514 N.Y.S.2d 55, 58 (2d Dep't 1987). Further, having observed the jury's reaction to plaintiff's counsel during the summation and over the course of the trial, the court finds it unlikely that the jury was persuaded by counsel's personal affirmation on behalf of plaintiff's physician.

Finally, defendant contends that counsel for plaintiff improperly assailed the credibility of the defense expert, Dr. Alkaitis, and vouched for the credibility of plaintiff's physician, Dr. Ricciardone, when he discussed the amount paid to Dr. Alkaitis for his services. While his remarks may have been "inelegant, tasteless, [and] offensive," *Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186 (4th Cir.1982), *cert. denied sub nom., Aetna Casualty & Surety Co. v. United States*, 460 U.S. 1102, 103 S.Ct. 1801, 76 L.Ed.2d 366 (1983), they did not go so far as to imply that Dr. Alkaitis would have testified to anything for the right price. *See Taormina v. Goodman*, 63 A.D.2d 1018, 1018, 406 N.Y.S.2d 350, 352 (2d Dep't 1978).

Much of this case, as both parties have stated, rests on the testimony of the various physicians who treated and observed the plaintiff. However, to have adopted Dr. Alkaitis' testimony, the jury would have had to conclude that Ms. Smith had completely fabricated her complaints of pain. The plaintiff was a very effective witness and the jury appeared to be impressed with her when she was on the stand. After presiding over the entire trial, the court is of the opinion that it was Ms. Smith's presentation, rather than the supporting testimony of her physicians, that carried the day. Therefore, even without these regrettable remarks by her attorney, it would seem that the jury would have found in her favor. Fortunately for the plaintiff, "[t]he rule confining counsel to legitimate argument is not based on etiquette, but on justice." *Gutin v. Frank Mascali & Sons*, 22 Misc.2d 1038, 1049, 198 N.Y.S.2d 492, 502 (Sup.Ct.1960). So although the plaintiff's comments during summation may have occasionally crossed the line of propriety, they were not significant enough to have unduly influenced the jury's verdict. *See Riffel v. Brumberg*, 91 A.D.2d 842, 842, 458 N.Y.S.2d 373, 374 (4th Dep't 1982).

Piedmont's other arguments concern comments or issues so minor or collateral to the issues before the jury as to render any improper conduct harmless. *See Cromartie v. New York City Transit Auth.*,

113 A.D.2d 915, 916, 493 N.Y.S.2d 818, 819 (2d Dep't 1985). Therefore, defendant's motions are denied.

So Ordered.